# Hood *v.* Connell Anthracite Mining Company, Appellant.

*Mines and mining—Anthracite mining—Acts of June 2, 1891, P. L. 176, and May 15, 1893, P. L. 52—Mine foreman—Superintendent—Foreman acting in dual capacity.*

1. The Act of June 2, 1891, P. L. 176, regulating mining operations in the anthracite field, and the Act of May 15, 1893, P. L. 52, relating to bituminous mines, in so far as they relate to the duties of a mine foreman are practically the same. Protection to the health and lives of those employed in mining operations is the primary purpose of both statutes.

2. The character of the duties of a mine foreman is not necessarily changed because he may hire or discharge men working under him, or suggest where and in what capacity the men shall work, or how the entries shall be driven, or the mine be developed.

3. Where a mine foreman does not have the exclusive charge of the interior workings, as a mine foreman, but acts as superintendent of the mine without reference to his duties as mine foreman, and he is negligent while acting in the latter capacity, the owner of the mine may be held liable for the consequences of such negligence. If the evidence is conflicting as to whether a person acts in the dual capacity of mine foreman and superintendent, the question as to the capacity in which he acts is for the jury.

Argued March 14, 1911. Appeal, No. 49, Jan. T., 1911, by defendant, from judgment of C. P. Sullivan Co., Feb. T., 1909, No. 50, on verdict for plaintiff in case of Emma C. Hood v. Connell Anthracite Mining Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the death of plaintiff's husband. Before TERRY, P. J.

At the trial it appeared that Paul Hood, a certified miner, was killed on March 14, 1908, while working in defendant's mine. His death was caused by the falling in of the roof of one of the chambers. The plaintiff claimed that the accident was caused by the negligence of William E. Johnson as mine superintendent. There was evidence that Johnson, who was the mine foreman, was also employed as general superintendent of the mine.

The court charged in part as follows:

Now we are going to leave it to you, gentlemen, to say what the fact is as to whether William E. Johnson was employed in these mines solely in the capacity of a mine foreman, performing only the duties pertaining to that position, or whether in addition to that he was employed by and was acting for the defendant company in a representative capacity, other than the position of mine foreman. Whether he was performing duties for the company, we say, in addition to his statutory duties, in the nature of supervising the work there, and such service as devolves upon the superintendent of the mine. If he was acting solely in his statutory capacity as mine foreman, then the company was not responsible for any negligence upon his part; and if you find that he was employed there simply as mine foreman under the statute that is the end of this case and the plaintiff cannot recover and you need not consider anything else. If, however, you find that in addition to his statutory duties he was acting in a representative capacity for the company, performing addi-

tional and other duties for it, then you will consider whether the company has been guilty of such negligence as will authorize a recovery against it.

Now this act of assembly which provides for the appointment of a mine foreman, and under which the mining company is not responsible for the mine foreman's negligence, does not relieve the mine owner of his liability for the unsafe condition of his mine, except when he complies with the act. It does not relieve him if he has knowledge, through his superintendent, that the mine foreman is incompetent and that the mine is unsafe.

The statute provides the remedy, and it is incumbent upon the owner when, through his superintendent, he finds the existence of unsafe conditions in the mine, to proceed to have those conditions remedied in the manner pointed out in the statute; and if this man W. E. Johnson was acting for the defendent company in a representative capacity, in addition to his statutory duties as mine foreman, then notice to him of the unsafe or dangerous condition of a place in which a miner was working would be notice to the company.

If W. E. Johnson was acting in this twofold capacity that we have mentioned, as mine foreman under the statute and in a representative capacity for the company, then it was his duty, upon being notified of the unsafe condition of the roof, to take steps to remedy it.

Verdict and judgment for plaintiff for $4,750. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant and (2) in refusing judgment for defendant non obstante veredicto.

*Seth T. McCormick* and *E. J. Mullen,* for appellant.— The case of Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204, is the authority upon which the court submitted this question to the jury. The Wolcutt case does not rule this case for two reasons: (a) The Wolcutt case was one involv-

ing the bituminous mining act while the present case arises under the anthracite mining act. (b) The facts in the Wolcutt case were entirely dissimilar to the facts of the present case.

The failure of Hood to obey the positive mandate of the statute forbidding work to be done, under dangerous conditions, as proved by the appellee's own evidence, was negligence per se and absolutely bars a recovery in this case: Young v. Railway Co., 100 Iowa, 357 (69 N. W. Repr. 682); Voshefskey v. Coal & Iron Co., 21 N. Y. App. Div. 168 (47 N. Y. Supp. 386).

The general rule is that where the negligence of the defendant consists of a violation of a statutory duty and hence is called negligence per se, the contributory negligence of the plaintiff or person killed or injured, appears as a defense to an action for damages as in other cases: Krause v. Morgan, 40 N. E. Repr. 886; Queen v. Dayton Coal & Iron Co., 95 Tenn. 458 (32 S. W. Repr. 460, 30 L. R. A. 82); Field v. Chicago, etc., Ry. Co., 14 Fed. Repr. 332; Taylor v. Carew Mfg. Co., 143 Mass. 470 (10 N. E. Repr. 308).

*Chas. M. Culver,* with him *John G. Scouten* and *David E. Kaufman,* for appellee.—Johnson was acting in a dual capacity as the evidence clearly showed and as the jury found: Durkin v. Coal Co., 171 Pa. 193; Golden v. Coal Co., 225 Pa. 164; Dempsey v. Coal Co., 227 Pa. 571; Wolcutt v. Coal & Coke Co., 226 Pa. 204.

Hood relying upon the superior judgment of this mine foreman and superintendent, believed that the roof was safe and continued working; each morning before beginning his work Hood tested the roof and found no change for the worse, but thought it was getting better. He was not guilty of contributory negligence: Lake v. Weber, 6 Pa. Superior Ct. 42; Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398; Mohney v. Cook, 26 Pa. 342; Reese v. Clark, 198 Pa. 312; Schiglizzo v. Dunn, 211 Pa. 253.

OPINION BY MR. JUSTICE ELKIN, May 17, 1911:

If the rule applicable to bituminous mines as laid down in Wolcutt v. Coal & Coke Co., 226 Pa. 204, applies to anthracite mines, then the question whether Johnson was acting in the dual capacity of mine foreman and superintendent was properly submitted to the jury. The learned counsel for appellant insist that there is a distinction between the Act of June 2, 1891, P. L. 176, regulating mining operations in the anthracite field, and the Act of May 15, 1893, P. L. 52, relating to bituminous mines, in so far at least as the duties of a mine foreman are prescribed. A careful examination of the two acts has satisfied us that there is no substantial basis for the distinction attempted to be made. It is a distinction without a difference when the purpose to be served by the statutory requirements of each act is taken into consideration. Protection to the health and lives of those employed in mining operations is the primary purpose of both statutes. Indeed, the phraseology and provisions of both acts in many of their essential and important features are almost identical. Difference in mining conditions in the two fields required the legislation to be adapted to the necessities of mining operations existing in each field. Aside from the provisions relating to these different conditions there is but little, if any, real distinction between the anthracite and bituminous acts. As to the protection intended to be afforded to the health and safety of the men so employed, the duties of the mine foreman are practically the same under both statutes. Certainly there are no such distinguishing features as to justify a court in laying down one rule for a mine foreman in the bituminous field, and an entirely different rule for a mine foreman in the anthracite region. After all, this is more a question of fact than of law. Both statutes clearly contemplate that the underground workings shall be under the exclusive charge and supervision of a mine foreman, and when the mine foreman has the exclusive supervision of the inside workings, the owner is relieved from responsibility for anything

that may occur in the mines. In other words, the mine foreman with a certificate of competency from the commonwealth, and a knowledge of the statutory duties, imposed upon him, is answerable for the safe conduct of the mining operations. He should be, and in contemplation of law is, the absolute master of the interior workings of the mine over which he has charge as mine foreman. The character of his duties as mine foreman is not necessarily changed because he may hire or discharge men working under him, or suggest where and in what capacity the men shall work, or how the entries shall be driven, or the mines be developed. He may do all of these things and still be acting in his capacity as mine foreman. Indeed, if he is a competent mine foreman, which the law presumes him to be, he is better qualified to do all of these things than anyone else. The test is not the particular acts he may do in connection with the underground workings, but whether he has the charge, control and supervision of these workings to the exclusion of any other authority. When he has this exclusive supervision no one can dispute his authority as mine foreman, and even the owner cannot interfere with the performance of his duties. It is the duty of the mine foreman to see that all the statutory requirements intended to safeguard the health and lives of the men are properly enforced. What the law contemplates is not always done and for this reason confusion sometimes arises on account of divided authority. It sometimes happens that the mine owner does not commit the exclusive charge of the interior workings to the mine foreman, but acting through his superintendent undertakes to exercise authority over certain parts of the interior workings without reference to the duties of the mine foreman. When this is done the owner may be held liable for the negligent acts of his superintendent or those acting under his direct authority. Again, mine owners in some instances, presumably to avoid expense, make use of the same person in the dual capacity of superintendent and mine foreman. This

results in a divided responsibility and may affect the question of liability in negligence cases. It has already led to an exception to the general rule pointed out by this court in Wolcutt v. Coal & Coke Co., supra. It is always safer and wiser for all concerned to follow the statutory rule which requires the underground workings to be in charge of the mine foreman. However, when this is not done, questions of fact arise which must as a rule be determined by a jury. In the case at bar we have concluded that whether Johnson acted in the dual capacity of mine foreman and superintendent was for the jury and we discover no reversible error in its submission. We cannot agree that the Act of May 29, 1901, P. L. 342, changes the status of a mine foreman. There is nothing in the language used to indicate such an intention on the part of the legislature. The questions of negligence, and of contributory negligence, as well as the credibility of the witnesses, were all for the jury.

There are but two assignments of error, one that the learned court below erred in not giving binding instructions for the defendant, and the other in refusing to enter judgment non obstante veredicto for appellant upon the whole record. There is no assignment as to the manner in which the case was submitted to the jury or as to any specific instruction given by the trial judge. We think the case was for the jury and that all the questions involved in the controversy were fairly and impartially submitted.

Judgment affirmed.