## LEHIGH VALLEY COAL CO. v. SHANDALLA.

### (Circuit Court of Appeals, Second Circuit. May 12, 1913.)

### No. 203.

1. MASTER AND SERVANT (§ 118*)—INJURIES TO SERVANT—APPLIANCES—DUTY TO FURNISH.

Where it was necessary to block coal cars as they descended a gravity grade to the shaft, by putting blocks under the wheels, it was defendant's nondelegable duty to provide safe and suitable blocks; and hence if blocks were improper instruments to be used, and blocks furnished had become broken or decayed, and defendant, through its officers, foreman, or superintendent, permitted them to remain and be used, and plaintiff was injured by reason of using a defective block, defendant was liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. § 118.*]

2. MASTER AND SERVANT (§ 189*)—OPERATION OF MINES—MINE FOREMAN—"VICE PRINCIPAL."

Where a certified mine foreman, employed by defendant, pursuant to Act Pa. June 2, 1891 (P. L. 190), regulating the operation of coal mines and providing for the appointment of a foreman having a certificate of competency from the commonwealth, was required to perform other work

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

than that required by the statute in the general supervision of the mine, he was a "vice principal" of defendant in the doing of such additional work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316.]

3. MASTER AND SERVANT (§ 278*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—METHOD OF WORK.

Plaintiff, an employé in a coal mine, was injured while putting blocks which were defective in front of the wheels of cars running down the gravity grade to the cage. The cars could be stopped either by putting blocks in front of the wheels, which was dangerous, or by putting "sprags" between the spokes of the wheels, which was safe. There was evidence that the blocking method had been discontinued, but the blocks had not been removed, and no "sprags" had been furnished. The blocks were used openly and notoriously down to the time of the accident. *Held* to authorize a finding that defendant was negligent in furnishing defective blocks to stop the cars and in authorizing a continuance of the dangerous method.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

4. MASTER AND SERVANT (§ 199*)—INJURIES TO SERVANT—FELLOW SERVANT.

A certified mine foreman, employed by defendant, in charge of the underground workings of its mine, in accordance with Act Pa. June 2, 1891 (P. L. 190), whose duties included many acts of a superintendent not covered by his duties to the state, represented the mine owner, and was not a fellow servant of a brakeman in a tunnel.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 491; Dec. Dig. § 199.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

5. APPEAL AND ERROR (§ 1064*)—REVIEW—INSTRUCTIONS—PREJUDICE.

In an action for injuries to a brakeman in a mine tunnel by being required to check the speed of a car by the use of defective blocks furnished by the operator of the mine, an instruction that defendant's certified mine foreman was not a fellow servant, but represented defendant in the mine, and if plaintiff told such foreman that the blocks were defective, that he did not wish to use them, and that they should be renewed, and the foreman told him to go on and use them, that was evidence from which the jury could find that defendant had authorized their use, merely permitted the jury to infer that the use of the blocks was authorized by defendant, and this, having been abundantly otherwise established, was not prejudicial to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by John Shandalla against the Lehigh Valley Coal Company to recover damages for injuries to plaintiff while employed by defendant in its Exeter, Pa., coal mine as a car pusher. While so employed, plaintiff lost the index finger of his left hand and two joints of the next finger by reason of an alleged defective block used in stopping cars as they descended to the cage. From a judgment for plaintiff for $2,563.95, defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Allan McCulloh, of New York City (Clifton P. Williamson and L. A. Doherty, both of New York City, of counsel), for plaintiff in error.

Rufus M. Overlander, of New York City (Herbert C. Smyth and Millard F. Tompkins, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and NOYES, Circuit Judges.

COXE, Circuit Judge. The complaint alleges that the defendant owns and operates a coal mine at Exeter, Pa., where it maintains a shaft, motor engine, gangways, tracks, cars and wooden hand brakes or blocks; all used in and about the transportation of coal. That on November 18, 1909, the plaintiff, while in the employ of the defendant as a laborer, was ordered by a boss of the defendant, at the foot of the shaft, to break the speed of and stop the loaded cars which were running rapidly on the tracks towards the shaft, by placing, with his hands, one of said blocks in front of a revolving wheel on each car. That the defendant was guilty of negligence in providing and maintaining defective, insecure and unsafe blocks, the same being old, rotten, worn out and wholly unfit for the purpose of blocking the said cars, all of which was well known to the defendant. That while the plaintiff was using one of said hand brakes, and without any fault on his part, the same was broken and shattered in his left hand by the wheel of one of the said cars running upon the same and causing the injury before mentioned.

The complaint also alleges, upon information and belief, that the said boss who ordered the plaintiff to stop the cars was the agent of the defendant, who was and is liable for his acts pursuant to sections 1 and 2 of the so-called Employers' Liability Act of Pennsylvania, passed June 10, 1907 (P. L. 523), which sections are set out in full in the complaint. The complaint concludes with a statement of the plaintiff's injuries and a demand for $10,000 damages.

The answer admits that the plaintiff was in the employ of the defendant on the 18th of November, 1909, as a laborer and, on information and belief, denies every other allegation of the complaint. For a second defense it alleges that the accident was caused, or contributed to, by the negligence of the plaintiff and for a third defense it is alleged that the injuries were caused by the negligence of fellow servants with the plaintiff.

In brief, then, we are dealing, so far as the pleadings are concerned, with a complaint charging the defendant with negligence in providing decayed, inadequate and dangerous brakes for the use of the plaintiff, in a highly dangerous occupation, and an answer denying the complaint and alleging that the plaintiff received his injuries through his own fault and that of his coemployés. The issue is plain and direct, and yet the oral arguments and the briefs were and are devoted, principally, to a discussion of the effect of the Pennsylvania statute mentioned above and the Anthracite Coal Mining Act of Pennsylvania passed June 2, 1891 (P. L. 190), providing for the appointment of a mine foreman who must have a certificate of competency from the commonwealth.

George Miller was the inside mine foreman, holding a certificate from the state of Pennsylvania, with full charge of the underground workings. James Linnen was "boss foot man," but he was not authorized to hire and discharge workmen. It was Linnen, who, according to the plaintiff's testimony, directed him to stop the cars with blocks placed under the wheels.

Leaving out of consideration for a moment the Pennsylvania law, let us consider what were the reciprocal obligations of the parties at common law.

[1] It was the duty of the defendant to furnish for the use of its servants suitable, fit and sufficient means and appliances, to maintain them properly and keep them in repair. The defendant could not avoid responsibility in this regard by shifting it upon another. Of course a corporation may, and, perhaps must, delegate this authority, but the person so delegated stands in the place of the master and it becomes his duty to see that proper and safe appliances are furnished and kept in repair so that they may be used without danger to the employé. It seems to us that if blocks were improper instruments to be used in the locality in question or if, having been properly placed there in good condition, they subsequently became broken or decayed and the defendant, through its officers, foreman or superintendent, permitted them to remain in that condition for the use of its servants, the jury were fully warranted in finding the defendant negligent. The negligence of Miller and Linnen, assuming it to be shown, and assuming that the Liability Act is inapplicable, does not exonerate the defendant for its negligence in providing decayed and antiquated brakes for the use of its employés. In Cone v. Delaware, L. & W. R. Co., 81 N. Y. 206, 37 Am. Rep. 491, the Court of Appeals says:

"Therefore the defendant's contention comes to this: We concede that we failed in our duty, we did not supply a suitable machine, but our servant, the engineer, could, notwithstanding, have so managed that the defect should cause no harm. * * * Neither upon principle nor authority can it be held that negligence of the servant in using imperfect machinery excuses the principal from liability to a coemployé for an injury which could not have happened had the machinery been suitable for the use to which it was applied. Had the injury resulted solely from the servant's negligence, the case would have been different."

See also Klicke v. Allegheny Steel Co. (C. C. A.) 200 Fed. 933; Schirmer v. Goss, 200 Fed. 396, 118 C. C. A. 548.

[2] It seems to us unnecessary to establish with minute precision the legal status in the mine of Miller and Linnen. As to Miller, it is not pretended that he gave the instructions to the plaintiff on the day of the accident. That he was employed by the defendant to do other work than that provided for by the statute and that in performing that work he represented the defendant is, we think, sufficiently established.

In Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204, 75 Atl. 197, the court held that a mine foreman appointed pursuant to the law was a fellow servant of the miners. If, however, the company also employs him as superintendent of the mine and through his negligence an injury happens to the miner, the company is liable.

In Hood v. Anthracite Co., 231 Pa. 647, 81 Atl. 56, the same court

held that the primary purpose of the act of June 2, 1891, was the protection of the health and lives of the mine workers. The court also held that the question whether the foreman acted in that capacity alone or also in the capacity of superintendent, was for the jury and that the owner may be held liable for his negligent acts or omissions while thus acting as superintendent.

The defendant's argument seems to lead to the conclusion that there was no one representing the defendant in the mine·for whose acts or omissions it was responsible, and consequently there was no redress for an employé who was injured there by the use of improper and dangerous machinery and appliances. The contention is that the defendant cannot be held responsible for Miller's acts because he was a servant of the commonwealth, and not of the Coal Company, and it cannot be held responsible for Linnen's acts because he was a fellow servant, although it is conceded that as to Linnen, at least, the question was for the jury. The court should hesitate long before establishing a rule which permits the dangerous business of subterranean coal mining to be carried on with no responsibility on the part of the mine owners.

[3] The testimony shows that there are two ways of stopping the coal cars as they run down to the cage by gravity. One is by putting blocks in front of the wheels and the other is by putting "sprags" between the spokes of the wheels. The blocking method is the more dangerous one and though there is testimony that the defendant had recommended the discontinuance of the blocking method, the blocks were in the mine at the place where they were to be used and their use was not prohibited. At least the questions relating to the blocks were for the jury and their verdict settled any dispute upon the facts as to who furnished the blocks, as to where they were kept and as to the condition of the particular block which caused the plaintiff's injury.

There was evidence that these blocks were furnished by the defendant and were used openly and notoriously down to the time of the accident, there being three or four piles of them between the tracks near the cage. The plaintiff testified that there were no "sprags" at that part of the mine. The jury were therefore justified in finding that the only means provided by the defendant in this dark tunnel were these, concededly dangerous, appliances.

In answer to this testimony Miller testified that in 1908, he told the men that they must not use the blocks any more but must use "sprags." It is significant, however, that no effort was made to remove the blocks and that months afterwards they were still being used openly in the mine at places where no "sprags" were accessible.

[4] The court is criticised for charging the jury as follows:

"As to Miller in this case he was certainly not a fellow servant; he was the man representing the company in this mine, but if it is a fact that the plaintiff told Miller that these blocks were defective and he did not want to use them and they ought to be renewed, and Miller told them to go and use them, that amounts to evidence from which you can find that this company was authorizing their use."

We certainly agree with the trial judge in thinking that Miller and Shandalla were not fellow servants. Whether Miller was employed

by the coal company or the state, he was not a fellow servant of a brakeman in the tunnel. The mine foreman who had under him 300 men, with full charge of the underground workings of the mine and who performed the services testified to by Miller which included many acts of superintendence not covered by his duties to the state, certainly in these particulars represents the mine owner.

[5] In any view, the charge was not prejudicial, for the only inference which the jury were permitted to draw was that the defendant was authorizing the use of blocks, a fact which was otherwise abundantly established. Speaking generally, the contention of the defendant exonerates the mine owner from all responsibility; the moment he employs the certificated foreman all liability ceases. There is no one, then, in the mine who legally represents the owner and no process by which the owner can be charged with negligence.

It seems to us that the proper construction of the Pennsylvania statute is that in so far as the foreman acts under the statute he is, in a sense, the servant of the state, but when he performs acts or gives orders which strictly relate to superintendence he, pro hac vice, becomes the servant of the mine owner. It is an astonishing proposition that a law which was intended for the protection of the miners should be so construed as to render them remediless when injured. Without discussing all of the exceptions argued, we deem it sufficient to say that in this dark tunnel the defendant had provided blocks not only, but old, worn out and particularly dangerous blocks, for the use of its servants and after being advised of the dangers to be expected from their use had permitted them to remain until this accident happened. The verdict was fully justified by the facts.

The judgment is affirmed.

WARD, Circuit Judge (dissenting). I think this judgment should be reversed because the trial judge erred in instructing the jury that Miller, the mine foreman, appointed under the act of June 2, 1891, was not a fellow servant of the plaintiff. The Supreme Court of Pennsylvania has held the contrary in Dempsey v. Coal Co., 227 Pa. 571, 76 Atl. 745, and Golden v. Mount Jessup Coal Co., 225 Pa. 164, 73 Atl. 1103. It has also held that the act of June 10, 1907, does not apply to such a mine foreman, and would be unconstitutional if it were intended to do so. D'Jorko v. Berwind, 231 Pa. 164, 80 Atl. 77; Rafferty v. National Mining Co., 234 Pa. 66, 82 Atl. 1089. These decisions of the highest court of Pennsylvania construing statutes of that state, delivered before the cause of action arose, are binding on us. Great Southern Fireproof Hotel Co. v. Jones, 193 U. S. 532, 24 Sup. Ct. 576, 48 L. Ed. 778. The question whether Miller acted both as mine foreman and superintendent, and whether, if he did, he was guilty of negligence as superintendent, and not as mine foreman, in respect to the negligence alleged by the plaintiff, were questions of fact for the jury. Hood v. Connell Anthracite Mining Co., 231 Pa. 647, 81 Atl. 56.