## LEHIGH VALLEY COAL CO. v. CALAUSKY.

### (Circuit Court of Appeals, Second Circuit. April 13, 1915.)

### No. 179.

1. MASTER AND SERVANT ⊗⇒278—MASTER'S LIABILITY FOR INJURY TO SERV-
ANT—NEGLIGENCE OF MASTER.

    A miner in a coal mine kept his tools and powder in a box owned by
him, which stood where it became wet from the drippings of the mine.
One of his blasts failed to explode, and he put in another and shot down
the coal, and the next day, while he was breaking it with a pick, an ex-
plosion occurred by which he was injured. In a suit to recover for the
injury, he claimed that the reason his first charge failed to explode was
because the powder was damp from the improper place where he was re-
quired to keep his box, and that such powder, when struck by the pick,
caused the second explosion. The powder was in a steel can, the opening
of which was closed by a screw cap, and he testified that the cap was
tightly screwed on, and that he did not think there was any danger of
dampness reaching the powder, and had never known of such a thing
happening. *Held* that, assuming his theory of the explosion to be correct,
which was not proven, under such evidence the mineowner was not charge-
able with negligence in not anticipating and providing against such an oc-
currence.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954,
956–958, 960–969, 971, 972, 977; Dec. Dig. ⊗⇒278.]

2. MASTER AND SERVANT ⊗⇒95½—MASTER'S LIABILITY FOR INJURY TO SERV-
ANT—REPRESENTATIVE OF MASTER—STATUTORY FIRE BOSS IN MINE.

    A fire boss in a coal mine in Pennsylvania, who is a state official, unless
it is shown that he performs other duties than those imposed on him by
statute, does not in any respect represent the mineowner, and any com-
plaints made to him by, or any statements made by him to, a miner are
not binding upon, and do not affect, such owner.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358;
Dec. Dig. ⊗⇒95½.]

3. APPEAL AND ERROR ⊗⇒272—EXCEPTIONS TO INSTRUCTIONS—TIME FOR TAK-
ING.

    Exceptions taken to the charge of the court after the jury has retired
cannot be considered by the appellate court.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–
1619; Dec. Dig. ⊗⇒272.]

In Error to the District Court of the United States for the Southern
District of New York.

Allan McCulloh, of New York City (C. P. Williamson, of New York
City, of counsel), for plaintiff in error.

Richard W. Darling, of New York City (George C. Holt, of New
York City, Francis X. McCaffry, of Brooklyn, N. Y., and L. B. Tread-
well, of New York City, of counsel), for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. [1] Writ of error to review a judgment en-
tered on the verdict of a jury awarding to the plaintiff $10,000 dam-
ages for personal injuries under the Employers' Liability Act of Penn-
sylvania of June 10, 1907 (P. L. 523). The plaintiff was a certified
miner employed by the defendant in an anthracite coal mine. He
bought from the defendant the explosives, powder, and dynamite which

he used, and kept them with his tools in a box also bought of the defendant. The box was constructed as follows: One half of the cover was permanent and fixed, and the other half loose, with two cleats fast to the under side, which projected under the fixed half, leaving a crack the full length of the cover. On the loose half there was a hasp, which fitted into a staple on the front of the box, so that it could be kept securely locked by a padlock. The box was placed where it was wet by the dripping of the mine. The plaintiff testified that he complained to the fire boss—i. e., assistant mine foreman, employed by the defendant, but an official of the state, appointed under the Pennsylvania act of June 2, 1891 (P. L. 176)—that the powder in the can in his box might get wet, who replied that the place was all right and the box good enough. The negligence charged in the complaint against the defendant is that it failed to give the plaintiff a safe place in which to work, because of the place in which the box was put.

Counsel for the plaintiff in their brief state the facts attending the explosion as follows:

"On the day previous to the accident, Calausky drilled a hole in the seam of coal and inserted a charge for the purpose of blasting out a portion of the coal. The charge consisted, first, of a stick of dynamite, with a detonating cap fastened in the dynamite; then a charge of black powder was inserted over the dynamite, with a hollow iron pipe, called a blasting barrel, through which to fire the charge; then the whole load was covered with dirt, tamped in, in order to make the explosion more effective. Then a squib, consisting of a paper cone containing powder, was inserted in the blasting barrel. The practice was that, when this squib was lighted, the miners and all the men withdrew to a safe place. When the powder in the squib became ignited, it flashed down to the black powder, which exploded. That would explode the detonating cap, and that exploded the dynamite, with the result that a large lot of coal was thrown out and was ready to be taken away. Calausky testified that he prepared such a charge and lit the squib, but that it did not explode; that he then tried another squib, and the charge still did not explode. Thereupon he examined the powder in his keg, and found that, although it retained its shape as powder when poured out of the keg, in fact it was damp and moist, and would crush when handled into a paste like mud. He thereupon obtained some dry powder and borrowed a blasting barrel from a fellow miner, made a new hold about a foot away from the old one, charged it as before, lit the squib, and retired. This time an explosion took place which blew out about 15 tons of coal, enough to make up about five car loads. Calausky and his helper thereupon proceeded to load coal onto the cars the rest of that day. The next morning they came back and resumed work. As usually occurs in mining, some of the pieces blown out were so large that it was necessary for them to be broken into smaller pieces. About 11 o'clock that morning, Calausky started to break up a large lump of coal with a pick, and when he struck it with the pick a severe explosion occurred in the interior of the lump of coal, which caused the injuries complained of."

No one knows how the explosion occurred. The plaintiff's theory was that the powder in the first blast was wet the day it was fired and therefore did not explode; that it was blown out by the second blast, and had dried out sufficiently the next day to explode. An expert for the plaintiff testified that, if the detonating cap was intact, contact of the pick with it might explode the powder, provided it were dry enough, and also the contact of the pick with some flinty material in the coal might do the same thing. What did cause the explosion evidently remains a matter of pure conjecture.

However, adopting the plaintiff's theory that the powder in the plaintiff's can was wet by the dripping from the mine through the cover of his box and was the direct cause of the explosion, we discover no negligence on the defendant's part. The powder was kept in a sheet steel can with a hole in the top three-quarters of an inch in diameter covered by a screw top. The plaintiff had the sole access to and handling of it. He testified that the top of the can was tight and the top screwed down, and that he did not think there was any danger of the powder getting wet, and that he had never known of such a thing happening. Under such circumstances it cannot be said that the defendant had any greater reason to anticipate that water dripping on the cover of the box would wet the powder in the steel can, and therefore should not be held liable for a consequence not fairly to be expected. The motion to direct a verdict for the defendant should have been granted.

[2] Other errors may be briefly noticed. The highest court of Pennsylvania has held that the fire boss is not a fellow servant of the mineowner's servants (Dempsey v. Coal Co., 227 Pa. 571, 76 Atl. 745; Golden v. Mt. Jessup Coal Co., 225 Pa. 164, 73 Atl. 1103), and that the Employers' Liability Act does not apply to such a foreman (D'Jorko v. Berwind, 231 Pa. 164, 80 Atl. 77). It was not shown that the fire boss represented the defendant in any respect, or performed any duties except those imposed upon him by statute. Consequently the conversation between him and the plaintiff did not affect the defendant, and should have been excluded. We have held that if the state official, besides his statutory duties, also acts in other respects for the mineowner, he represents him in these respects; but there must be some evidence of this. Lehigh Valley Coal Co. v. Shandalla, 205 Fed. 715, 124 C. C. A. 83. If the fire boss had undertaken to do so, he had no right to say that plaintiff's box should stay where it was; but all he did say was that the place was all right and the box good enough. The plaintiff could not leave the box where it was, relying upon the judgment of the fire boss, because his own judgment was quite as good.

It was error to permit the cross-examination of Miller, the defendant's mine foreman, as to whether he took steps to secure the plaintiff's box after the accident. This was well calculated to prejudice the jury against the defendant. The box was the plaintiff's property, was removed to his cellar after the accident, and was sold by his wife to some one who long afterwards brought it back to the mine. It was no more the duty of the defendant to secure it than it was of the plaintiff.

[3] Some exceptions were taken to the charge after the jury retired, which for that reason cannot be considered. Mann v. Dempster, 179 Fed. 837, 103 C. C. A. 325.

The judgment is reversed.