LEHIGH VALLEY COAL CO. v. WASHKO.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 138.

1. COURTS ⊕⇒275—UNITED STATES COURTS—ALLEGATIONS AS TO JURISDICTION.
On allegations that plaintiff was a citizen of the United States and a resident of New York City, and that defendant was a Pennsylvania corporation, an action was properly brought in the southern district of New York.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. ⊕⇒ 275.]

2. EVIDENCE ⊕⇒67(1)—PRESUMPTIONS—CONTINUANCE OF FACT OR CONDITION.
Where the testimony showed that plaintiff was born in Austria, she would be considered an alien until the contrary was shown.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 87; Dec. Dig. ⊕⇒67(1).]

3. ALIENS ⊕⇒2—EVIDENCE OF ALIENAGE.
Evidence that an alien was married in Pennsylvania, without showing whether the man she married was a citizen or an alien, did not show that she had lost her status as an alien.
[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 2, 3; Dec. Dig. ⊕⇒2.]

4. COURTS ⊕⇒270—UNITED STATES COURTS—DISTRICT IN WHICH SUIT MUST BE BROUGHT.
An alien can maintain a suit in the federal courts against a citizen only in the district of his residence, unless defendant waives his personal privilege to be sued only in such district.
[Ed. Note.—For other cases, see Courts, Cent. Dig. § 810; Dec. Dig. ⊕⇒270.]

5. COURTS ⊕⇒276—DISTRICT IN WHICH SUIT MUST BE BROUGHT—WAIVER OF OBJECTIONS.
A defendant, informed when an action is brought that plaintiff is an alien suing in the wrong district, may then elect to dismiss the case as

being improperly brought, or may waive the objection and proceed to trial; but, if not then advised that plaintiff is an alien, he waives nothing and makes no election by joining issue on the merits and on the averments as to citizenship, and going to trial, and may raise such point at the trial, when plaintiff's alienage is first disclosed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. ☞276.]

**6. COURTS** ☞277—UNITED STATES COURTS—DISTRICT IN WHICH SUIT MUST BE BROUGHT—DETERMINATION OF QUESTIONS.

Where, in an action brought by an alien in the wrong district, facts appear indicating that plaintiff has brought the action in the wrong district, the court may suspend the trial to enable plaintiff to produce witnesses on the issue as to whether defendant, when it appeared, joined issue, or went to trial, had knowledge or information that the action was being prosecuted in the wrong district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 818; Dec. Dig. ☞ 277.]

**7. COURTS** ☞276—DISTRICT IN WHICH SUIT MUST BE BROUGHT—WAIVER.

If defendant, with knowledge or information that plaintiff is an alien suing in the wrong district, takes no step to put a stop to the further prosecution of the suit, he must be deemed to have waived his right.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. ☞276.]

**8. COURTS** ☞277—UNITED STATES COURTS—DISTRICT IN WHICH SUIT MUST BE BROUGHT—DETERMINATION OF QUESTIONS.

Where, on a trial, facts appear indicating that plaintiff has brought the action in the wrong district, the issue of defendant's knowledge thereof when it appeared, joined issue, or went to trial, is one which the judge may hear and determine, as he would on affidavits, if it were raised before the trial.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 818; Dec. Dig. ☞277.]

**9. COURTS** ☞277—UNITED STATES COURTS—DISTRICT IN WHICH SUIT MUST BE BROUGHT—DETERMINATION OF QUESTIONS.

While the trial judge exercises his judgment in determining this issue, there is no further discretion to be exercised by him; and if it appears that, at the time defendant appeared and prosecuted its defense to the merits, it had neither knowledge nor information sufficient to form a belief that the averments of citizenship and residence were untrue, it is reversible error to refuse to dismiss.

[Ed. Note.—For other cases, see Courts, Cent Dig. § 818; Dec. Dig. ☞ 277.]

**10. APPEAL AND ERROR** ☞185(1)—RESERVATION OF GROUNDS OF REVIEW—WAIVER OF ERRORS.

Where, in an action brought by an alien in the wrong district on averments of citizenship and residence in such district, it appears at the trial that defendant did not know such averments were untrue when it joined issue and went to trial on the merits, but the court nevertheless denies a motion to dismiss, defendant's right to assign error is not lost by completing the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1166–1168, 1170–1176; Dec. Dig. ☞185(1).]

**11. COURTS** ☞276—DISTRICT IN WHICH ACTION MUST BE BROUGHT—WAIVER.

In an action brought in a district other than that of defendant's residence, on averments of plaintiff's citizenship and residence in such district, it appeared at the trial that plaintiff was an alien, whereupon defendant moved to dismiss on the ground that she had failed to estab-

lish the jurisdiction of the court, and had failed to establish the cause of action alleged. *Held* that, by joining the technical objection to the jurisdiction with the motion to dismiss on the merits, and thus asking for a decision on the merits before determination of the jurisdictional question, defendant waived the technical objection.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. ☜276.]

12. MASTER AND SERVANT ☜95½—NEGLIGENCE OF MINE FOREMAN.

That a mine foreman, appointed under Act Pa. June 2, 1891 (P. L. 176), under which the mine foreman is a state officer for whose negligence the mine owner is not liable, had something to do with measuring coal and dealing out supplies in addition to his statutory duties, did not make him any the less a state officer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358; Dec. Dig. ☜95½.]

13. MASTER AND SERVANT ☜118(5)—LIABILITY FOR INJURIES—FAILURE TO SUPPLY PROPS.

There was no failure on the part of a mine owner to provide props, as required by Act Pa. June 2, 1891, where, though they were not stacked up in the galleries, where they would have interfered with operations, there was always a sufficiency of them elsewhere, ready for the mine foreman whenever he might direct their use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 209; Dec. Dig. ☜118(5).]

14. MASTER AND SERVANT ☜118(5)—LIABILITY FOR INJURIES—UNSAFE PLACE TO WORK.

It could not be inferred that the roof of a gallery in a mine was unsafe when the mine owner finished the construction of the gallery, where it stood for two years before an accident.

[Ed. Note —For other cases, see Master and Servant, Cent. Dig. § 209; Dec. Dig. ☜118(5).]

15. MASTER AND SERVANT ☜95½—LIABILITY FOR INJURIES—NEGLIGENCE OF MINE FOREMAN.

Act Pa. June 2, 1891, requires mine owners to place the underground workings of their mines under the charge and daily supervision of a mine foreman, and requires the mine foreman or some competent person or persons designated by him to examine all slopes, shafts, etc., at least once every day, and every working place in the mine at least once every alternate day, and to direct every working place to be properly secured by props or timber, and the safety thereof to be assured by directing that all loose coal or rock shall be pulled down or secured, and that no person shall be permitted to work in an unsafe place except to make it safe. *Held*, that under the Pennsylvania authorities the mine owner is not responsible for the negligence of the mine foreman and his assistants, and if they fail to make their daily inspection, or conduct it so carelessly that they fail to detect dangerous conditions, the owner is not liable, if he did not know they were failing properly to discharge their statutory duty; they being state officers.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358; Dec. Dig. ☜95½.]

16. MASTER AND SERVANT ☜291(9)—ACTIONS FOR INJURIES—INSTRUCTIONS.

In a mine employé's action for injuries caused by falling rock, it was error to charge that the mere happening of the accident raised a presumption of negligence and the burden shifted to defendant, as the falling of rock in mines is not unusual or extraordinary, and may happen without negligence, and the doctrine of res ipsa loquitur applies only where

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the happening is extraordinary, or out of the usual, so that a presumption of negligence is warranted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1140; Dec. Dig. ⊜=291(9).]

In Error to the District Court of the United States for the Southern District of New York.

Action by Katie Washko, an infant, by Frank Dindl, her guardian ad litem, against the Lehigh Valley Coal Company. Judgment for plaintiff, and defendant brings error. Reversed.

This cause comes here upon appeal from a judgment in favor of defendant in error, who was plaintiff below. The action was brought by a widow to recover damages for the death of her husband, who was employed by defendant in its mine in Pennsylvania. He was killed on December 6, 1912, by the fall of a piece of rock from the roof of the gallery in which he was at work hauling water.

Allan McCulloh, of New York City (Clifton P. Williamson and Edward W. Walker, both of New York City, of counsel), for plaintiff in error.

Rufus M. Overlander, of New York City (Herbert C. Smyth, of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The first question raised is one of jurisdiction.

[1-4] The complaint averred that plaintiff was a citizen of the United States and a resident of the city of New York and that defendant was a Pennsylvania corporation and therefore a citizen of Pennsylvania. Upon these averments the action was properly brought in the Southern district of New York. The answer averred that defendant had no knowledge or information sufficient to form a belief as to the allegations of plaintiff's citizenship and residence and upon this, among other issues, the parties went to trial. The testimony introduced by plaintiff showed that she was an alien. Plaintiff's counsel disputes this statement; but the testimony shows that she was born in Austria. She was an alien therefore from the time of her birth and we are bound to consider her an alien until the contrary is shown. There is nothing in the record which shows the contrary; it is not shown by the mere fact that "in 1911 she married in Pennsylvania," without any showing whether the man she married was a citizen or an alien. As the record discloses that at one time she was an alien and fails to disclose that she at any time thereafter lost that status we must regard her as an alien when the action was brought. As an alien she could not maintain suit in the federal courts against the citizen defendant except in the district of its residence, unless defendant waived its personal privilege to be sued only in such district. Whether or not there was such waiver in this case is a matter of contention and reference is made to the former decision of this court in Lehigh Valley Coal Company v. Yensavage, 218 Fed. 547, 134 C. C. A. 275.

[5] Had the defendant been informed when the action was brought that plaintiff was an alien suing in the wrong district, it could then have

elected to dismiss the case as being improperly brought or could have waived the objection and proceeded to trial. But if not then advised that plaintiff was an alien, defendant waived nothing and made no election by joining issue on the averments as to citizenship, by filing general appearance, by joining issue on the merits and by going to trial. When alienage is first disclosed at the trial defendant is entitled to raise the point, unembarrassed by the circumstance that plaintiff's false averments in the complaint had misled it into going to trial on the merits. The Yensavage Case so holds. In the case at bar defendant, at the close of plaintiff's testimony, which disclosed her alienage, moved to dismiss "on the ground that the plaintiff has failed to establish first, the jurisdiction of this court; the plaintiff has failed to establish the cause of action alleged in the complaint, has failed to show any negligence on the part of the defendant."

[6-8] In the Yensavage Case the majority of the court called attention to the proposition that, when facts appeared, which indicated that the plaintiff had improperly brought the action in that District Court, the court might inquire whether the defendant when it appeared, joined issue, or went to trial, did have knowledge or information sufficient to form a belief that the action was being prosecuted in the wrong court, on which distinct issue plaintiff had the right to be heard if he so desired. Indeed the court might properly suspend the trial to enable plaintiff to produce witnesses on this issue. This is undoubtedly correct; if defendant with such knowledge or information takes no step to put a stop to the further prosecution of the suit, he must be deemed to have waived his right. Moreover this distinct issue is one which the judge himself may hear and determine at the trial, as he would on affidavits if it were raised before the trial. It not infrequently happens that plaintiff avers that he is a resident of a particular district, whereupon the defendant on motion shows conclusively by affidavits that the averment is untrue, and dismissal follows.

[9] In the Yensavage opinion, however, there is a phrase which should not be broadly interpreted. It is said that the disposition of the motion to withdraw the general appearance for the cause stated would "rest in the discretion of the court." If this be taken as meaning that the trial judge, taking the evidence, exercises his judgment thereon, it is correct; but this court is not to be understood as holding that there is any further "discretion" to be be exercised. If it appears by the proof that at the time defendant appeared and prosecuted its defense on the merits it had neither knowledge nor information sufficient to form a belief that plaintiff's averments of citizenship and residence were untrue, it is asserting a right which it had never waived, and denial by the court of the relief to which that right entitled it would be reversible error.

[10] Upon reflection also we think that it would be unwise practice to hold that, when such error is committed and exception duly reserved, the right to assign error is lost by thereafter completing the trial. Both parties and all their witnesses are in court; the time of court and jury has already been given to the controversy; it is to the public interest that the whole matter be finally disposed of. Under these circumstanc-

es to compel defendant to elect between insisting on his statutory right and the presentation of what may be a meritorious defense, would be a harsh and unnecessary practice; the situation is very different from what it would be, when the question of jurisdiction or privilege is presented in advance of the trial. Nor is the situation the same as when exception to denial of a motion to dismiss on plaintiff's testimony is lost because defendant puts in testimony; the right still remains to renew the motion on all the testimony while under the practice contended for the right to rely upon a privilege which the law gives defendant is gone forever.

[11] The motion made by defendant in the case at bar is substantially the same as that made in the Yensavage Case; it asked for relief both on the technical ground and on the merits. Had it been severed and application been made first to withdraw general appearance so as to raise the technical objection, the question would have been presented whether or not defendant knew of the objection before it went to trial. On that point there would be the sworn statement in the answer that at that time it did "not have knowledge, or information sufficient to form a belief" as to the averment by plaintiff of her citizenship. Opportunity could then have been given to plaintiff to introduce evidence, if she could, to show that defendant did have such knowledge or information before the trial. The trial could have been suspended, or, if necessary, a juror withdrawn, to enable plaintiff thus to maintain her action. By asking for a decision on the merits before determination of the jurisdictional question defendant, under the Yensavage decision, practically waived, with knowledge, the technical objection.

The action is brought under the Pennsylvania Anthracite Mining act of June 2, 1891, P. L. 176 (3 Purdon's Digest, 13th Edition). The following excerpts from that statute, which are found in the briefs, are relevant to the subject-matter here discussed. Public policy in Pennsylvania has concluded that the mining industry was one to be dealt with as a class by itself and has regulated the operations in mines to a much greater extent than it has those in other industrial plants.

Article 17, § 8, provides:

"Sec. 8. That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by any owner, operator, superintendent, mine foreman or fire boss of any coal mine or colliery, a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby; and in case of loss of life by reason of such neglect or failure aforesaid, a right of action shall accrue to the widow and lineal heirs of the person whose life shall be lost, for like recovery of damages for the injury they shall have sustained."

Article 12 contains the following provisions:

"Rule 1. The owner, operator or superintendent of a mine or colliery shall use every precaution to ensure the safety of the workmen in all cases, whether provided for in this act or not, and he shall place the underground workings thereof, and all that is related to the same, under the charge and daily supervision of a competent person who shall be called 'mine foreman.'

"Rule 2. Whenever a mine foreman cannot personally carry out the provisions of this act so far as they pertain to him, the owner, operator or superintendent shall authorize him to employ a sufficient number of competent persons to act as his assistants, who shall be subject to his orders."

"Rule 12. The mine foreman or his assistants shall visit and examine every working place in the mine at least once every alternate day, while the men of such place are or should be at work, and shall direct that each and every working place is properly secured by props or timber, and that safety in all respects is assured by directing that all loose coal or rock shall be pulled down or secured, and that no person shall be permitted to work in an unsafe place unless it be for the purpose of making it secure.

"Rule 13. The mine foreman, or some other competent person or persons to be designated by him, shall examine at least once every day all slopes, shafts, main roads, traveling ways, signal apparatus, pulleys and timbering and see that they are in safe and efficient working condition."

"Rule 24. Any miner or other workman who shall discover anything wrong with the ventilating current or with the condition of the roof, side, timber or roadway, or with any other part of the mine in general, such as would lead him to suspect danger to himself or his fellow workmen or to the property of his employer, shall immediately report the same to the mine foreman or other person, for the time being in charge of that portion of the mine."

"Rule 43. Every passageway used by persons in any mine and also used for transportation of coal or other material, shall be made of sufficient width to permit persons to pass moving cars with safety, but if found impracticable to make any passageway of sufficient width, then holes of ample dimensions, and not more than one hundred and fifty (150) feet apart, shall be made on one side of said passageway. The said passageway and safety holes shall be kept free from obstructions and shall be well drained; the roof and sides of the same shall be made secure."

Article 11, § 2, of said act is as follows:

"Sec. 2. Every workman in want of props, ties, rails or timbers shall notify the mine foreman or his assistant of the fact at least one day in advance, giving the length of the props or timber required; and in case of danger from loose roof or sides, he shall not continue to cut or load coal until the said props and timber have been properly furnished and the place made secure."

In plaintiff's brief it is stated that:

"Rule 43 is the rule which plaintiff relies upon as a basis for defendant's liability."

Other sections which need not be quoted refer to "mine foreman" and "assistant mine foreman," providing for an examination by state authority to ascertain their qualification, certification, etc.

This act and a similar one, the Bituminous Mining Act (P. L. 1911, p. 756), have been frequently construed by the courts of Pennsylvania. They reached the conclusion—under the language of the acts they could have reached no other—that in many important respects the state has taken the conduct of mining operations out of the hands of the owners and has placed it in the hands of state officers. As a natural corollary it has been held that for injuries which result from the failure of these state officers properly to perform their statutory duties the owner will not be held liable unless it be shown that he had knowledge of the failure of the state officer to perform his duties. Reference to these authorities will be found in our opinions in Lehigh Valley Coal Company v. Calausky, 222 Fed. 664, 138 C. C. A. 188, and Vagaszki v. Consolidated Coal Company, 225 Fed. 913, —— C. C. A. ——.

The rock that fell was 6 or 7 feet long, 4 feet wide and a foot thick towards the center, thinning down towards the edges. It was what is called a "saddle," being a peculiar formation of sand slate found in

shale or sand rock; around it was soapstone, a solid sand rock roof. The under or exposed side of a saddle looks like natural rock, its upper side, however, is very smooth, and thus, having no particular bond with the sand rock in which it is imbedded, it is liable to fall out of its place; such fall apparently producing no other derangement of the surrounding parts of the roof from which it falls. When a saddle is found to exist in the roof, it is usually supported by a prop. The gallery in which the accident occurred was an old one; from time to time saddles had fallen; in various parts of it, to prevent such an occurrence, props had been placed; the props nearest to this saddle were distant on one side from 6 to 10 feet and on the other 25 feet. Props were only placed when the roof was found bad. As has been indicated, the above statute provides for careful and repeated examinations to determine the condition from day to day of all galleries and chambers where work is being done, so that dangerous places may be detected and protected by props. The testimony showed that on every alternate day the mine foreman made such an examination of this gallery; on the days when he did not make the examination the assistant foreman, who also testified, examined it. These examinations were made before the miners came in. On these examinations the foreman or assistant foreman carried a torch, looked carefully at the roof, and tested it by striking it with the end of a steel-tipped rod; such being, as the foreman testified the usual and ordinary method used in all mines. In response to a cross-question he said that he never knew of any examination being made by boring into the roof; no evidence that this had ever been tried in any mine was introduced.

[12, 13] There was evidence that the foreman at this mine, in addition to his statutory duties, had something to do with measuring the coal and dealing out supplies; that circumstance did not make him any the less a state officer. Something was said in argument about a scarcity of props; but there was no testimony to support any theory that the owner had failed to provide them. They were not stacked up in the galleries where they would have interfered with operations, but there was always a sufficiency of them elsewhere ready for the foreman whenever he might direct their emplacement.

[14, 15] As to the requirements of rule 43, on which plaintiff relies: there is nothing to show that this gallery, when constructed, was not of the proper width, with proper passageway and safety holes, free from obstructions and well drained, with the roof and sides then secure. Since the roof at this place had stood for some two years, it cannot be inferred that it was unsafe when the owner finished the construction of the gallery. The constant examination to protect against possible changes of conditions which may make a safe place unsafe the state intrusts to its own officers, men whom it has examined, whose qualifications it approves, and whose competency it certifies to. It is the mine foreman or his assistants who, by rule 12, are to examine every working place once every alternate day, to direct the removal of loose rock or the securing thereof by props or timber. It is to the mine foreman, or other person for the time being in charge of that portion of the mine (an assistant), that rule 24 requires any miner or

231 F.—4

other workman who discovers anything wrong with the condition of the roof immediately to report.

We are satisfied that, under the Pennsylvania authorities, the mine owner is not to be held responsible for the negligence of persons whom the state has placed in charge of matters which, but for the statute, he would have had attended to by persons of his own selection. If the state officers failed to make their daily inspection, or conducted it so carelessly that they failed to detect dangerous conditions, the owner is not to be held liable when there is nothing to show that he knew they were failing properly to discharge their statutory duty—and there is no such showing here. Golden v. Mt. Jessup Coal Company, 225 Pa. 164, 73 Atl. 1103.

[16] We are further of the opinion that the jury were improperly instructed that the case was one in which the mere happening of the event raises a presumption of negligence and the burden shifts to the defendant. This doctrine of res ipsa loquitur applies in cases where the happening is extraordinary or out of the usual, and therefore a presumption of negligence on the part of those in charge is warranted. But the falling of rocks in mines, like the explosion of steam boilers, is not unusual or extraordinary and may happen without negligence. Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905.

The judgment is reversed.