CENTRAL R. CO. OF NEW JERSEY v. SHARKEY.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

No. 130.

1. COMMERCE ⨕27(8)—EMPLOYERS' LIABILITY ACT—"INTERSTATE COMMERCE."
   A car repairer, hit by a locomotive in a railroad yard while carrying bolts to repair a car used in interstate commerce, *held* engaged in "interstate commerce," within the Employers' Liability Act (Comp. St. §§ 8657–8665.)
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. APPEAL AND ERROR ⨕204(2), 237(2)—RESERVING GROUNDS FOR REVIEW—EVIDENCE.
   Where no objection was offered, exception taken, or motion to strike out made, it cannot be urged upon appeal that certain evidence was inadmissible because hearsay.

3. MASTER AND SERVANT ⨕265(4)—EMPLOYERS' LIABILITY ACT—BURDEN OF SHOWING EMPLOYMENT IN INTERSTATE COMMERCE.
   Evidence that a car repairer in a New Jersey railroad yard had been told that a Pennsylvania railroad car, which he had been instructed to repair, was "a rush car for Philadelphia," etc., *held* to make a prima facie showing that the car was employed in interstate commerce, within the Employers' Liability Act (Comp. St. §§ 8657–8665).

4. MASTER AND SERVANT ⨕286(32)—EMPLOYERS' LIABILITY ACT—NEGLIGENCE.
   In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that plaintiff car repairer was injured by a locomotive operated at a rapid rate of speed for a railroad yard, that it was hidden behind a smoke screen and gave no warning of its approach, etc., *held* to make defendant railroad's negligence a jury question.

5. NEGLIGENCE ⨕101—EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE.
   Plaintiff's contributory negligence does not bar his right to recover under the Employers' Liability Act (Comp. St. §§ 8657–8665), but only diminishes the amount of his damages.

6. MASTER AND SERVANT ⨕288(3)—EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.
   In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that plaintiff car repairer was hit from behind by rapidly approaching locomotive, while avoiding an engine proceeding in the opposite direction on another track, etc., made his assumption of risk a jury question.

7. MASTER AND SERVANT ⨕219(1)—ASSUMPTION OF RISK—OBVIOUS DANGERS.
   Plaintiff assumes the risk of negligence upon the part of his fellow employés, if the danger be so obvious that an ordinarily prudent person would have observed and appreciated it.

8. APPEAL AND ERROR ⨕272(2)—RESERVING GROUNDS FOR REVIEW—EXCEPTION.
   An exception to the refusal to grant a requested instruction, taken after the jury had retired, presents no question for review.

⨕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Southern District of New York.

Action by Cornelius Sharkey against the Central Railroad Company of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

The action is brought under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]) to recover for personal injuries sustained by defendant in error, hereinafter called plaintiff, as a result of an accident which occurred on August 25, 1917, in the yards of the plaintiff in error, hereinafter called defendant, at Bayonne, N. J. The defendant is a corporation organized and existing under the laws of the state of New Jersey, and is engaged in interstate commerce, and the plaintiff was in the defendant's employ at the time of the accident. The nature of plaintiff's employment and the facts connected with his injury are stated in the opinion.

At the close of the plaintiff's case a motion was made by defendant to dismiss the complaint, which motion was denied. The motion was renewed at the end of the whole case, when it was similarly denied. The plaintiff has recovered a verdict in the sum of $7,800, and judgment has been entered in the sum of $7,842.39.

De Forest Brothers, of New York City (Henry L. De Forest, of New York City, of counsel), for plaintiff in error.

Edward J. McCrossin, of New York City (Vine H. Smith, of New York City, of counsel), for defendant in error.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge (after stating the facts as above). The question presented to the court in this case is whether upon the facts shown the plaintiff was engaged in interstate commerce at the time he received the injuries of which he complains. At the time of the accident and for two years prior thereto the plaintiff was employed by the defendant as a car repairer in its Bayonne yards. His repair work in general was done on freight cars which he said "went to other states and came from other states." He was asked as to his work on the day of the accident, "Do you know of your own knowledge that these freight cars, which you worked on from day to day and on the day of this accident, went to other states and came from other states?" And to this he answered without objection, "Yes, sir."

On the morning of the accident the plaintiff, according to his story, began his work by bolting up a coupling on a car of the Pennsylvania Railroad which had been placed upon the repair track for that purpose. After he had been working a half hour at this job, his boss stopped him and sent him out to the part of the defendant's premises known as the West Eighth Street freight yard to inspect incoming cars in place of the regular inspector. He also told him, if he received any letters, he was to take them to another repairer who would tell him what to do. He received the letters and delivered them as he was directed. He was then asked:

"Q. Did he say anything to you? A. He told me to go and get some bolts whenever I finished at the West Eighth Street yard and take them to Twenty-Second street.

"Q. To do what with them? A. To repair this car.

"Q. What car? A. This Pennsylvania car. * * *

259 F.—10

"Q. Did the man that you took orders from there in the absence of Mc-Ternan say anything about the car? A. *Yes; he told me she was a rush car to go out.*

"Q. *A rush car to go out?* A. *Yes.*

"Q. *He didn't say where it was bound to or anything?* A. *He said Philadelphia; that is all I know about it.*"

The McTernan above referred to was the plaintiff's boss. The plaintiff relied on these facts as showing that his boss had deputized another employé to instruct him as to what he was to do on his return from his work of temporary inspection, and that the person so deputized told him to get certain bolts and repair a certain car, because it was a rush car for Philadelphia. At the time of the accident he had finished his work of inspection in the West Eighth Street yard, had gotten the bolts, and was going back with them on his shoulder to repair "the rush car for Philadelphia," walking in the space between the two railroad tracks, when he was hit from behind by an engine moving in the same direction in which he was going.

[1] So far as the question whether he was at the time engaged in interstate commerce is concerned, it must be answered in the affirmative, if his account of the facts is believed. There is no difference in principle between the state of facts which he testifies to and the facts in Pedersen v. Delaware, Lackawanna & Western Railroad Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. In this case the man was carrying bolts to repair a car used in interstate commerce. And in the Pedersen Case the man was carrying bolts to repair a bridge used in interstate commerce.

[2, 3] But upon the argument in this court and in his brief counsel for the defendant stated that "the idle remark" made to the plaintiff by the deputized boss that, after finishing in the West Eighth Street yard, he was to go back to the yard from which he came and make repairs on the rush car for Philadelphia, was without any probative force whatever, and that the defendant's records would have been the very best evidence, and that McTernan, the boss, "was right in court all the time, if it had been desired to question him." It appears, however, that no objection was made in the court below to the admission of this testimony, and no exception was taken to it. It may be conceded that this statement made to the plaintiff that the car was destined for Philadelphia was hearsay testimony, and not made in the performance of any duty which required the party who made it to inform plaintiff as to the destination of the car. The person who made the statement which the plaintiff was allowed to repeat should have been himself called to testify that the car was destined for Philadelphia. But as no objection was offered, and, no exception taken, and no motion to strike out was made, it is too late now to say that the testimony was inadmissible and could not be considered by the jury. In Schlemmer v. Buffalo, Rochester & Pittsburg Railway Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, the Supreme Court held that statements of a witness, although based on hearsay, constitute evidence in a cause unless reasonably objected to as hearsay. See Wightman v. Campbell, 161 App. Div. 49, 52, 146 N. Y. Supp. 666, affirmed 217 N. Y. 479, 112 N. E. 184, Ann.

Cas. 1917E, 673. But the New York Court of Appeals has held other-wise in Dayton v. Parke, 142 N. Y. 391, 37 N. E. 642.

But this hearsay testimony now objected to is not all the testimony there is to show that the car was an interstate car. The plaintiff testi-fied that the car he was on his way back to repair was the car he had been at work upon when he was called off to go to the West Eighth Street yard. And when asked what car that was he testified that it was a Pennsylvania Railroad freight or box car, and that it had "Pennsyl-vania Railroad" on it. And at another time in the course of his testi-mony he was asked whether he had any idea what car it was he was working on and had left unfinished when he was called to go and in-spect cars at the West Eighth Street freight yard, and he had replied, "She was a Pennsylvania car." And on cross-examination he was ask-ed how he knew that the freight cars he worked upon came from out-side of the state of New Jersey and went outside of the state of New Jersey, and he replied, "I seen it on the sides of the cars, a Pennsyl-vania." Then followed:

"Q. Now, this car that you were working on, you say, in the morning after McTernan came to you, you say that was a Pennsylvania Railroad car? A. Yes sir.

"Q. You mean that was a Pennsylvania Railroad car; is that right? A. Yes, sir.

"Q. Belonged to the Pennsylvania Railroad? A. Yes, sir."

The statement that there was a car belonging to the Pennsylvania Railroad on the repair track does not prove that the car was at the time engaged in interstate commerce, it is true; but the presence of such a car on such a track may not be devoid of some significance, in view of the order that the plaintiff was to work on "a rush car for Philadel-phia." We think all this, taken together, was sufficient in the first in-stance at least to meet the initial burden which was on the plaintiff to show that he was employed in interstate commerce. It then be-came the duty of the defendant to overcome it and show the contrary. In Pittsburgh, C., C. & St. L. Ry. Co., v. Glinn, 219 Fed. 148, 150, 135 C. C. A. 46, the Circuit Court of Appeals in the Sixth Circuit declared that, where the facts show the case may well have been within the statute, the initial burden is satisfied, and it is for the defendant to show the contrary.

The defendant, to counteract this testimony called McTernan, the plaintiff's boss, and asked him if, by looking at his records, he could tell the number of Pennsylvania Railroad cars on that repair track on August 25, 1917, which was the day of the accident. And the witness in reply said that there were two—one a gondola car (meaning a coal car), and another which was repaired by the night men. The records disclosed no other. But the testimony of McTernan, conceding it to be true, does not show that the plaintiff's testimony is false, for the chief statistical clerk of the defendant, who testified that he kept in his office a record of all foreign cars that were received, was asked and answered as follows:

"Q. What I understand you to say is that, if a car is taken off a train and put on this repair track and some minor repair done to it, and it is then put back onto a train track, you would have no record of that? A. No; we would not."

And the deputized boss, who told the plaintiff that he was to finish the rush job for Philadelphia, and who was the defendant's own employé, was not put upon the stand to contradict the plaintiff's testimony.

In Minneapolis & St. Louis Railroad Co. v. Winters, 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, the injury occurred while the plaintiff was repairing an engine. The engine had been used in interstate commerce before the injury, and was so used afterwards; but there was nothing to show that it was permanently or specially devoted to such commerce, or assigned to it at the time, and it was held that the case was not within the federal Employers' Liability Act. And it is said that the Winters Case requires us to reverse the instant case. But this is to overlook the fact that there is evidence in this record, received without objection and exception, that this plaintiff at the time of the injury was in the state of New Jersey and on his way to complete in that state repairs on a car which belonged to the Pennsylvania Railroad and which was "a rush order for Philadelphia." It is not necessary to comment further upon this phase of the case. But we may remark that in the Winters Case the engine which was repaired was not used at all for three days following the accident, and that the court in its opinion proceeded on the ground that no interstate movement was immediately in contemplation at the time when the repairs were made. And in Great Northern Railway Co. v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322, the Supreme Court held that a car coming from another state, and whose interstate movement is arrested to permit repairs fitting it to reach its destination, is not by reason of such delay withdrawn from interstate commerce.

[4] It is said, however, that this case must be reversed, because the plaintiff has not shown any negligence on the part of the defendant. We are unable to take any such view of the case. If the story told by the plaintiff was believed by the jury, and their verdict shows that they did believe it, negligence was proven. The jury, and not the court, are triers of the facts. The plaintiff testified that at the time of the accident he was walking in a space between two tracks, and that this space was about four feet wide; that as he was walking along he saw a train coming towards him; that he looked behind him to see whether anything was coming from that direction on the other track, and seeing nothing he kept close to that track to avoid suckage from the engine approaching him, fearing that the suckage might pull him in with the air; that he kept on walking straight ahead; that as the train approaching him rushed past him he turned around a second time, and looked on the track behind him and saw nothing but smoke; that the smoke was very heavy and thick, and he could not see through it; that he walked about three feet, when he was hit by the engine coming on the track behind him, and which was going fast; that he heard no bell rung and no whistle blown.

In Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, the injury occurred in a railroad company's yard, when an employé working on one of the tracks therein was run over and injured by a freight car moved by a switch engine. The court declared that—

"The. ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion."

The doctrine thus stated is to be understood in the light of the circumstances of that case. The plaintiff who was repairing a track, never looked for the approaching train, although there was nothing to obstruct his vision, and the switch engine was backing the cars toward him very slowly; the speed of the engine "being about that of a man walking." Under the circumstances as they existed in that case there was no negligence in failing to ring a bell or blow a whistle. But we do not understand that the court meant to lay down the doctrine that under no circumstances could it be negligence if an engine in a railroad yard failed to blow its whistle or ring its bell. In Colasurdo v. Central Railroad of New Jersey (C. C.) 180 Fed. 832, 835, the learned District Judge declined to apply the doctrine of the Aerkfetz Case to the case before him, stating that he did—

"not think that as matter of law there was no negligence in operating in a freight four cars under their own impetus, after dark, without warning and without light."

The case was brought to this court where it was unanimously affirmed. 192 Fed. 901, 113 C. C. A. 379. And see Lehigh Valley Railroad Co. v. Scanlon, 259 Fed. 137, —— C. C. A. ——, decided by this court at this term.

We are of the opinion that the evidence in the instant case is such as to make it distinguishable from the Aerkfetz Case. If the smoke was so dense that one could not see through it, we cannot say as a matter of law that it was not negligence for an engine to run in a freight yard at a fast rate of speed and without warning. And in this connection it should be said that the defendant's engineer in the instant case, who operated the train which struck the plaintiff, testified that the path upon which the plaintiff was walking when he was hit was one used by hundreds of persons, and that he knew that fact, and that it was matter of common knowledge. He also said that because of that fact he had the bell of his engine ringing at the time. In this he was contradicted by others than the plaintiff. The engine which struck the plaintiff was burning bituminous coal, and the engine of the other train was burning either bituminous or a mixture of that and hard coal, as was shown by the admission of the witness called by the defendant. Under the circumstances the jury had the right to believe the plaintiff's testimony that the smoke was so thick as to obscure his vision, and that under the circumstances there was negligence. There was evidence that the engine was driven at a rate of speed which was fast for a railroad yard, and that it was hidden behind a smoke screen, and was operated without warning.

[5] If the plaintiff was negligent, and his negligence contributed to the injury, it did not bar his right under the act to recover, but simply diminished the amount of his damages in proportion to the amount of his negligence. U. S. Compiled Statutes, 1916, Annotated, vol. 8, § 8659. The jury was correctly instructed upon that subject.

[6, 7] At the conclusion of the case the defendant moved to dismiss

the complaint, on the ground that the plaintiff had assumed the risk of the injuries sustained. This the court denied, and there was no error in so doing. It cannot be said that upon the testimony in this record the plaintiff has assumed the risk as matter of law. But the court charged on that subject as follows:

"The railroad company does not owe to an employé in a railroad yard that same degree of care that would be required of it in respect to a passenger upon its trains, or in or about its station. A railroad yard in its very nature is a more or less dangerous place, and those who engage in work in such places assume some risk; and I instruct you that by his employment in the yard Sharkey assumed the ordinary and usual risks incident to and inherent in his employment. He did not, however, assume the risk of negligence upon the part of his fellow employés. If the negligence of his fellow employés, and they representing the company, was the proximate and inducing cause of his injury, the plaintiff is entitled to recover, provided you find that the plaintiff and defendant were engaged in interstate commerce."

The charge in this particular is open to objection. To charge that an employé does not assume the risk of negligence upon the part of his fellow employés is too broad a statement. The rule is stated in Erie Railroad Co. v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166. The facts in that case were somewhat similar to the facts in this case. The action in that case was to recover for causing the death of a section hand, who at the time of the accident was walking on one of the tracks of the railroad when he was struck and run over by an engine. The man testified that he had no warning and did not see the approaching engine, owing to steam from a passenger train which had just passed on another track. In holding that it was not error to refuse to charge that the man assumed the risk and danger of using the tracks by going upon them as he did, the court said that the request—

"failed to take into account the undisputed testimony that the engine ran into Marietta (the section hand) without signal or warning to him. Under such circumstances the injured man would not assume the risk attributable to the negligent operation of the train, if the jury found it to be such, unless the consequent danger was so obvious that an ordinarily prudent person in his situation would have observed and appreciated it."

In the instant case no exception at the time was taken to that portion of the charge relating to assumption of risk. But after the jury had retired counsel for defendant said:

"Mr. Rees: I desire to except to your honor's refusal to submit the following questions to the jury, previously submitted: Did the accident happen as the result of one of the risks assumed by the plaintiff—that is, one of the chances that the plaintiff took—which was either inherent in the work in which he was engaged, or was so open and obvious to him that he appreciated or should have appreciated the dangerous risk therefrom?

"The Court: I think I have covered that sufficiently in my charge to the jury.

"Mr. Rees: Exception."

[8] It appears that defendant's counsel took a number of exceptions to the charge at the close of the charge and prior to the retirement of the jury. At no time was any exception taken to that portion of the charge which dealt with assumption of risk. The exception above re-

ferred to was not, in form at least, an exception to the charge. It was an exception to a refusal to charge, and an exception which was made after the jury had been sent out to deliberate upon the verdict. The common-law rule requires exceptions to instructions or to refusal to instruct to be taken at the trial to be available, and to be taken before the retirement of the jury. In Hickory v. United States, 151 U. S. 303, 316, 14 Sup. Ct. 334, 339 (38 L. Ed. 170), the court, speaking through Chief Justice Fuller, declared that—

"The rule in relation to exceptions to instructions is that the matter excepted to shall be so brought to the attention of the court before the retirement of the jury as to enable the judge to correct error, if there be any, in his instructions to them, and this is also requisite in order that the appellate tribunal may pass upon the precise question raised without being compelled to search the record to ascertain it."

And see Miller & Lux v. Petrocelli, 236 Fed. 846, 852, 150 C. C. A. 108; Alverson v. Oregon-Washington R. & Nav. Co., 236 Fed. 331, 334, 149 C. C. A. 463; Coal Co. v. Calausky, 222 Fed. 664, 138 C. C. A. 188; Copper River & N. W. Ry. Co. v. Heney, 211 Fed. 459, 128 C. C. A. 131; Northern Central Coal Co. v. Milburn, 205 Fed. 270, 123 C. C. A. 450; Brent v. Lilly Co. (D. C.) 202 Fed. 335; Johnson v. Garber, 73 Fed. 523, 19 C. C. A. 556.

This court has repeatedly held that exceptions to a charge taken after the jury has retired are improperly reserved and cannot be considered. Park Bros. v. Bushnell, 60 Fed. 583, 9 C. C. A. 138; Commercial Travelers' Accident Co. v. Fulton, 79 Fed. 423, 24 C. C. A. 654; Berwind-White Coal Co. v. Firment, 170 Fed. 151, 95 C. C. A. 1; Mann v. Dempster, 179 Fed. 837, 103 C. C. A. 325; Star Co. v. Madden, 188 Fed. 910, 110 C. C. A. 652. An exception to a refusal to charge, taken after a jury has retired, can have no greater efficacy than an exception to the charge itself could have.

The exception to the refusal to instruct as requested on assumption of risk, not having been taken until after the jury had retired, cannot now avail.

Judgment affirmed.

LEARNED HAND, District Judge (concurring). It does not seem to me that the name "Pennsylvania Railroad," upon the car, was any evidence that the car was at the time engaged in interstate commerce. Furthermore, I do not think the correctness of the charge upon the assumption of risk is involved in the case, and express no opinion that it was too broad. Otherwise I concur.