# DENVER & R. G. W. R. CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3772.   Decided April 21, 1922.   (206 Pac. 1103.)

1.  MASTER AND SERVANT—COMPENSATION CLAIMANT'S EMPLOYMENT IN INTERSTATE COMMERCE QUESTION OF LAW ON UNDISPUTED EVIDENCE.  Where evidence is without conflict, the question of whether applicant under the Workmen's Compensation Act at the time of injury was engaged in intrastate or interstate commerce is one of law.

2.  COMMERCE—BLACKSMITH'S HELPER REPAIRING CHISEL FOR WORK ON ENGINE TEMPORARILY WITHDRAWN FROM SERVICE NOT ENGAGED IN INTERSTATE COMMERCE.  Railroad blacksmith helper, who was injured while repairing chisel for work on repair of engine temporarily withdrawn from service and which immediately before and after the accident was used in intrastate commerce by railroad engaged in both intrastate and interstate commerce, was not engaged in interstate commerce at the time of accident, as the instrumentality upon which he was working was not devoted to any particular commerce.[1]

3.  MASTER AND SERVANT—WORKMAN REPAIRING CHISEL FOR WORK ON ENGINE TEMPORARILY WITHDRAWN FROM SERVICE ENGAGED IN "INTRASTATE COMMERCE" WITHIN COMPENSATION ACT.  Where a railroad's blacksmith helper was injured while repairing a chisel for work on the repair of an engine temporarily withdrawn from service, and which immediately before and after the accident was used in intrastate commerce by a railroad engaged in both intrastate and interstate commerce, *held*, that the employé was engaged in intrastate commerce, within Comp. Laws 1917, § 3155, as amended by Laws 1919, c. 63.

4.  CONSTITUTIONAL LAW—COURTS CANNOT MODIFY LAWS BECAUSE DIFFICULTIES ARISE IN ENFORCEMENT.  Courts cannot strike down or modify laws by forced construction merely because some difficulties may arise in their enforcement and application.

5.  MASTER AND SERVANT—FINDING ON EVIDENCE IN COMPENSATION CASE FINAL.  Where there is some substantial evidence in support of a finding of fact by the Industrial Commission, it will not be reviewed on appeal.

[1] *Kuchenmeister* v. *L. A. & S. L. R. R. Co.*, 52 Utah, 116, 172 P. 725; *Perez* v. *Utah Pac. R. R. Co.*, 52 Utah, 286, 173 Pac. 236; *Utah Rapid Transit Company* v. *Ind. Com.*, 59 Utah, 232, 204 Pac. 87.

6.  MASTER AND SERVANT—ALLOWANCE OF FEE TO DOCTOR BY AWARD
    IN COMPENSATION CASE HELD NOT PREJUDICIAL. Where a fee was
    allowed by the Industrial Commission to a doctor who was fully
    paid for his services, and both the doctor and compensation
    claimant testified that they made no claim for doctor's fee, the
    employer was not prejudiced by the allowance of the fee.

Application of the Denver & Rio Grande Western Railroad
Company for writ of certiorari to review an award of the
Industrial Commission of Utah to George Lindsay Burt, com-
pensation claimant under the Workmen's Compensation Act.

AWARD AFFIRMED.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for plain-
tiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robertson,*
Asst. Atty. Gen., for defendants.

FRICK, J.

The plaintiff made application to this court for a writ of
certiorari to review certain proceedings of the Industrial
Commission of Utah, hereinafter called Commission. The
proceedings which we are asked to review arose out of the
application by one Burt, an employé of the plaintiff, for
compensation under our Workmen's Compensation Act
(Comp. Laws 1917, §§ 3061-3165) for an injury sustained by
him in the course of his employment. The Commission made
an award in his favor. The plaintiff made application for a
rehearing as provided by law which was denied, and this
application followed.

The proceedings have been certified to this court, and plain-
tiff's counsel have filed elaborate briefs in support of their
contentions. In addition to plaintiff's briefs, other counsel
representing other railroads have also been permitted to file
briefs amici curiæ, while the Attorney General has filed briefs
on behalf of the Commission and the applicant. In addition

to the briefs filed, able oral arguments have been made in support of the respective contentions of counsel.

The evidence is entirely without conflict, and hence it is only necessary to refer to the controlling facts without specially setting forth the findings of the Commission either in whole or in part. ·

The undisputed evidence shows that the applicant was a young man in the employ of the plaintiff as a blacksmith's helper; that on the 6th day of October, 1921, in the course of his employment, he received an injury to his left eye, for which injury he was awarded compensation pursuant to our Workmen's Compensation Act; that on the day aforesaid the applicant and one McPhie, a coemployé, were working in what is called the North blacksmith shop of the plaintiff at Salt Lake City; that on said day they were ordered to prepare two eccentric cam key bolts out of steel furnished them by plaintiff; that the bolts were to be used on an engine which had temporarily been withdrawn from service and placed in plaintiff's roundhouse to be repaired; that, while the applicant and McPhie were engaged in making the bolts, they used a certain tool called a "hot chisel" on which there was a wooden handle; that the handle was worn and no longer fit for use, so McPhie, who was a blacksmith apprentice and apparently the superior of the applicant, directed the latter to take the chisel and put it in condition for use by placing a new handle on it; that the applicant took the chisel, and, in attempting to remove the old handle, which was splintered, by "chopping" it, a piece or splinter of the wood from the handle flew off and entered applicant's left eye causing serious injury; that the chisel in question was an ordinary tool in a blacksmith shop and was used in making repairs on all kinds of engines and other appliances which needed repair; that the engine for which the bolts were being repaired was withdrawn from service to be repaired as aforesaid on the morning of the accident; that the engine, preceding the accident and immediately thereafter, was used to operate a train on one of the branch lines owned and operated by plaintiff between the stations of Thistle Junction, Utah, on plaintiff's

main line, and Marysvale, Utah, a distance of 132 miles; that the plaintiff operated a number of lines of railroad in addition to the Marysvale branch, to wit, the main line between Ogden, Utah, and Denver, Colo., of which there are about 300 miles in Utah, a branch line between Springville, Utah, on the main line, and Silver City, Utah, about 43 miles, one between Provo, Utah, on the main line, and Heber City, Utah, 26 miles, one from Roper, Utah, to Park City, Utah, 32 miles, together with seven other branch lines, all of which branch lines are wholly within the state of Utah; that said branch lines are all connected with and are feeders of the main line between Denver, Colo., and Ogden, Utah; that about 65 per cent. of the business that is done on the said main line and branch lines consists of interstate commerce, while 35 per cent. constitutes intrastate business; that the volume of intrastate business on the Marysvale branch exceeds 35 per cent., but plaintiff's witnesses could not state the exact proportions of intrastate and interstate business done on that line; that the engine for which the bolts were being made, as before stated, was used to haul two trains on the Marysvale branch between Thistle Junction and Marysvale; that a mixed freight and passenger train was operated on said branch going south from Thistle Junction to Marysvale on one day and returning the next, excluding Sundays; that each train carried both intrastate and interstate freight and passengers, as before stated; that the engine was withdrawn from service on the morning of the 6th of October, 1921, and returned into service again on the 12th of that month; that when returned into service after being repaired it went again to the Marysvale branch the same as before it was repaired; that the applicant and McPhie did all kinds of engine repair work in the blacksmith shop, regardless of whether the engines were used exclusively on the main line which was operated between Denver and Ogden or on the branch lines in Utah, and in connection therewith did such other work as they were ordered to do, some of which was on instrumentalities used exclusively in interstate commerce, while some were exclusively devoted to intrastate business, while others still, like the engine in

question, were used in both interstate and intrastate commerce.

Upon the foregoing evidence the Commission found that plaintiff, at the time of the injury, was employed in intrastate and not in interstate commerce, and hence found as a conclusion of law that the Commission had jurisdiction of his application. There is some other evidence with regard to the character and extent of applicant's injury to which we shall refer, however, when we come to consider that question.

Plaintiff's counsel vigorously contend that the Commission exceeded its authority or jurisdiction in making the award, and that its findings and orders in that regard should be annulled and set aside. The principal question to be determined, therefore, is: Did the Commission exceed its power or jurisdiction in making the award?

In view that the evidence is without conflict, the question of whether the applicant, at the time of the injury, was engaged in intrastate or interstate commerce, and hence whether the Commission had jurisdiction, is one purely of law. *Miller* v. *United Fuel Gas Co.*, 106 S. E. 49.

Plaintiff's counsel, however, insist that under the undisputed facts the applicant, at the time of the injury, was engaged in interstate commerce, and hence the Commission was without jurisdiction. Counsel's position, stated in their own language as found on page 4 of their original brief, is this:

"The evidence is clear and undisputed that if his employment be looked at as a single unit and as a whole, that it had to do with interstate commerce to a large extent, and that to a large extent the employment was a part of interstate commerce."

In their reply brief they enlarge somewhat upon their first statement and make their position somewhat clearer. At page 2 of their reply brief they say:

"* * * It is further conceded that the state can by appropriate legislation take jurisdiction of such employés at all times when the employés are not covered by the federal Employers' Liability Act. We contend, however, that the Legislature of the State of Utah in section 3155 did not take such jurisdiction, but on the contrary that it excluded from the Workmen's Compensation Act of this state all employés of interstate carriers except those who are never engaged in interstate commerce. In other words, if an employé is at some

times engaged in interstate commerce, then we think that section 3155 excludes him from the Workmen's Compensation Act, even though at the moment of injury his work was not of a character which would be regarded as a part of interstate commerce."

It will be observed that counsel, to some extent at least base their contention upon our statute, to which we shall refer later.

Their contention, as outlined in their original brief, they insist, is supported by both state and federal decisions. We here insert the principal cases which counsel insist support their contention: *Southern Ry. Co. v. Lloyd,* 239 U. S. 496, 36 Sup. Ct. 210, 60 L. Ed. 402; *North Carolina R. Co. v. Zachary,* 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; *Kinzell v. C., M. & St. P. R. Co.,* 250 U. S. 130, 39 Sup. Ct. 412, 63 L. Ed. 893; *Philadelphia, etc., R. Co. v. Smith,* 250 U. S. 101, 39 Sup. Ct. 396, 63 L. Ed. 869; *St. L., S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; *Erie R. Co. v. Winfield,* 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; *Southern Pac. Co. v. Ind. Acc. Com.,* 251 U. S. 259, 40 Sup. Ct. 130, 64 L. Ed. 258, 10 A. L. R. 1181; *Philadelphia & R. Co. v. Hancock,* 253 U. S. 284, 40 Sup. Ct. 512, 64 L. Ed. 907; *Erie R. Co. v. Szary,* 253 U. S. 86, 40 Sup. Ct. 454, 64 L. Ed. 794; *New York Cent. R. Co. v. Carr,* 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298; *Koons v. P. & R. R. Co.,* 271 Pa. 468, 114 Atl. 262; *C. R. R. Co. of N. J. v. Sharkey,* 259 Fed. 144, 170 C. C. A. 212; *D., L. & W. R. Co. v. Busse* (C. C. A.) 263 Fed. 516; *Payne v. Ind. Acc. Com.* (Cal. App.) 195 Pac. 81; *Kuchenmeister v. L. A. & S. L. R. Co.,* 52 Utah, 116, 172 Pac. 725.

The *Payne Case* referred to is now pending in the United States Supreme Court on a writ of certiorari. Counsel have cited some other cases, but nothing is contained in them that is not contained in those cited above. We shall not pause here to review the foregoing decisions. It must suffice to say that the facts in all of them in some respects are clearly distinguishable from those hereinbefore stated, and hence those decisions cannot control the decision in this case. The cases

cited by counsel upon the construction of our statute will be referred to when we discuss that subject.

Upon the other hand, the Attorney General, among others, cites and relies upon the following cases as supporting his contention that the Commission had jurisdiction: *Ill. Cent. R. Co.* v. *Behrens,* 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, and cases there cited: *Gallagher* v. *N. Y. C. R. Co.,* 180 App. Div. 88, 167 N. Y. Supp. 480; *Hines* v. *Ind. Acc. Com.,* 184 Cal. 1, 192 Pac. 859, 14 A. L. R. 720; *M. & St. L. R. Co.* v. *Winters,* 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; *Perez* v. *Union Pac. R. Co.,* 52 Utah, 286, 173 Pac. 236; *Utah Rapid Tr. Co.* v. *Ind Com.,* 59 Utah 232, 204 Pac. 87.

It is not necessary to refer to the other cases cited by the Attorney General upon the subject now under consideration. As we read and interpret *Ill. Cent. R. Co.* v. *Behrens,* supra, it is decisive of this case. In that case the scope or extent of the federal Employers' Liability Act of April 22, 1908 (U. S. Comp. St. §§ 8657-8665), which is the act now in force, was directly decided. Indeed, that was the precise and only question that was presented for decision in that case. After quoting section 1 of the federal Employers' Liability Act, and in referring to the meeting and scope that shall be given to the words ''suffering injury while he (the employé) is employed by such carrier in such commerce (interstate commerce),'' it is said:

"Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce. The act was so construed in *Pedersen* v. *Delaware, Lackawanna & Western Railroad Co.,* 229 U. S. 146. It was there said (p. 150): 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employé is employed by the carrier in such commerce.' Again (p. 152): 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged' "—citing a number of cases.

In that case, therefore, it is in effect held that three facts

must exist and be established in order to authorize a recovery for an injury under the federal Employers' Liability Act; (1) That the employer is engaged in interstate commerce; (2) that the employé is likewise so engaged; and (3) that the service or act out of which the injury arose is a part of interstate commerce or so closely connected therewith as to constitute it a part of such commerce. That is precisely what this court has held in the cases of *Perez* v. *Union Pacific R. Co.* and in *Utah Rapid Tr. Co.* v. *Ind. Com.,* supra. Such, as we read the opinions, has been the uniform holding of the Supreme Court of the United States ever since the decision in the *Behrens Case* from which we have just quoted. If, therefore, we apply the test as it is stated in the cases to which we have last above referred, to the undisputed facts of the case at bar, it seems to us but one conclusion is permissible. True, plaintiff was engaged in interstate commerce, and if the applicant had been employed in operating an interstate train, or in switching cars on such a train, although the train might have been made up of both interstate and intrastate cars, or if he had been engaged in repairing an instrumentality which was exclusively used in interstate commerce like in the case of *Pedersen* v. *D., L. & W. R. Co.,* 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, cited in the *Behrens Case* and the *Kuchenmeister Case,* then there would be much force to counsel's contention. The case at bar, however, falls within the doctrine announced in the *Winters Case,* since the engine in question was used in both interstate and intrastate commerce.

Again, the engine is not like a bridge or a portion of a track on an interstate line of railway where no part can be said to be devoted to any other than interstate commerce, although intrastate commerce may also be carried over such bridge or track. Moreover, the applicant at the time of the injury was not actually engaged in repairing the engine in question. What he was doing was repairing a mere tool which was used to repair instrumentalities that were used in both interstate and intrastate commerce. The tool had therefore not been dedicated to any particular commerce, nor was it intended to

be devoted to or used for any particular commerce. The question, therefore, is: Did the act of repairing such a tool constitute interstate commerce, or was it so closely connected therewith as to be an essential part of such commerce? We think not.

If therefore it did not constitute interstate commerce, it must be held to be intrastate commerce; and, if it constituted the latter, the federal Employers' Liability Act does not apply.

To make our position clear, we here offer the suggestion that if Mr. McPhie had handed the chisel to some mechanic who, although employed by the plaintiff, was, nevertheless, exclusively engaged in its intrastate service, no one, we think, would have the temerity to contend that the mechanic who repaired the chisel was engaged in interstate commerce merely because the chisel just before it was handed to him had been used in repairing some bolts which were to be used in repairing an engine which was used in interstate commerce. Under such circumstances, it might, however, be said that the chisel was repaired by an employé who was not engaged in interstate commerce, and hence one of the elements before referred was lacking. While it is true that the employé was not engaged in interstate commerce, yet if repairing the chisel was a part of interstate commerce why, while in the act of repairing the chisel, was he not engaged in interstate commerce? If the act of repairing the chisel constituted interstate commerce, why would not the mechanic who repaired it be engaged in interstate commerce during the time he was so engaged notwithstanding that his general employment was in intrastate commerce? It seems to the writer that, if the act of repairing the chisel as a matter of law constituted interstate commerce, then any employé of plaintiff's who might have repaired it while he was engaged in the service must necessarily be held to have been engaged in such commerce. This, to the mind of the writer, merely proves that the act of repairing the chisel was entirely disconnected from interstate commerce and must be considered as though the chisel had been repaired at a time when it was not

used for any particular service but was repaired for the purpose of again permitting it to be used in any service for which it was adapted. To the mind of the writer, therefore, it seems clear that in repairing the chisel the appellant was not engaged in interstate commerce, but was necessarily engaged in intrastate commerce, and hence his application comes within the doctrine stated in the *Behrens Case* and in the *Winters Case*, to which reference has been made.

It is, however, insisted by counsel for plaintiff that our statute, Comp. Laws Utah 1917, § 3155, as amended by chapter 63, Laws Utah 1919, and as in force when the applicant was injured, deprived the Commission of jurisdiction in this case. That section reads:

"The provisions of this title shall apply to employers and their employés engaged in intrastate and also in interstate and foreign commerce for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce."

Referring now to counsel's contention in their reply brief where it is said that section 3155, supra, excluded the applicant "from the Workmen's Compensation Act," although in repairing the chisel he was not engaged in interstate commerce, we are clearly of the opinion that the contention is untenable. In support of their contention counsel cite *Barnett* v. *Coal & Coke Ry. Co.*, 81 W. Va. 251, 94 S. E. 150; *Suttle* v. *Hope Natural Gas Co.*, 82 W. Va. 729, 97 S. E. 229; *State* v. *Postal Tel. Cable Co. of Wash.*, 101 Wash. 630, 172 Pac. 902; *Spokane & I. E. Ry. Co.* v. *Wilson*, 104 Wash. 171, 176 Pac. 34, and *Bergeron* v. *T. & P. Ry. Co.*, 144 La. 225, 80 South. 262. While the statutes construed in those cases are similar to ours, yet they contain some features which are not contained in section 3155, supra, and the decisions relied on, to a large extent, are based upon such features, as a mere cursory reading of the decisions will disclose. Indeed, there is such a difference between the statutes construed in those cases and our own as now in force that we could subserve no good purpose in reviewing those cases or in pointing out why

they are not controlling here. Moreover, the language in our statute, in our judgment does not admit of the construction placed upon it by counsel. In construing section 3155 we must keep in mind the provisions of the whole act of which that section is a part. The purpose of our Compensation Act is to provide compensation and to protect all employés and to include all employés and employers except those who are specifically excepted from the act and those who come within the federal Employers' Liability Act of April 22, 1908. That is not only made manifest in the other parts of the act, but it is so stated in express terms in section 3155. The controlling language of that section is:

"The provisions of this title [act] shall apply to employers and their employés engaged in intrastate and also in interstate and foreign commerce."

As a matter of course, although the foregoing language is general and sweeping, it must, nevertheless, be confined to employés and employers who do not come within the federal Employers' Liability Act. Where Congress has spoken with respect to those engaged in interstate or foreign commerce, the jurisdiction of the state is necessarily excluded. We have, however, shown that Congress included only such employers and employés as were engaged in interstate commerce at the time of the injury and such employés who were injured by an instrumentality which at the time was used in interstate service. If the injury was produced by an instrumentality which was not at the time used in interstate service, neither the employé nor the injury is covered by the federal Employers' Liability Act. That is made so clear in the *Behrens Case* that all controversy must cease. That, manifestly, is also the intent and purpose of our Workmen's Compensation Act. It is, however, provided in section 3155, supra, that in order to be entitled to compensation for an injury the work in which the injured employé was engaged at the time of the injury "shall be clearly separable and distinguishable from interstate or foreign commerce." In construing that provision we must again keep in mind that the act was passed for the protection of those who are injured in the course of

their employment and are not covered by the federal Employers' Liability Act, and the section must therefore receive a construction and application in furtherance of the purposes of the general act. As pointed out, all workmen are included within the act except those expressly excluded and those covered by the federal Employers' Liability Act. Any workman, therefore, who is not expressly excluded from our act and does not come within the federal Employers' Liability Act in case of injury in the course of his employment is entitled to compensation under our act. That is all that is intended or meant by section 3155 as now in force. True, the language of the act is that the workman shall be compensable only in case that the work he was engaged in at the time of the injury is "clearly separable and distinguishable from interstate or foreign commerce." That, however, merely means that the Commission or this court, in passing upon whether a particular service constituted interstate commerce or otherwise shall be satisfied that the service was separable and distinguishable as stated. Neither the Commission nor this court has a right to arbitrarily exclude a workman from the benefits of our act unless he is expressly excluded or is covered by the federal Employers' Liability Act. In this case, however, we are of the opinion that the applicant clearly comes within the general provision of our act; that he clearly comes within the provisions of section 3155 and as clearly does not come within the federal Employers' Liability Act. Therefore the Commission acted within its jurisdiction and powers in making the award.

The foregoing conclusions respecting the meaning and effect of section 3155 are, we think, clearly supported by the Supreme Court of Maryland in the case of *Hines* v. *Baechtel,* 137 Md. 513, 113 Atl. 126, where a statute in terms precisely like section 3155 was construed and applied.

It is urgently insisted, however, that the foregoing construction of the act should not prevail, because it is inconvenient and burdensome for the plaintiff and other employers engaged in interstate commerce to provide insurance or to set apart a fund to compensate those of their em-

ployés who may at the time of injury be engaged in intrastate service while their general employment is in interstate commerce. A sufficient answer to that contention is that courts cannot strike down or modify laws by forced construction merely because some difficulties may arise in their enforcement and application. If the law produces inconvenience or burdens, application for relief should be made to the Legislature, not to the courts.

It is next contended that the allowance is excessive, in that allowance was made for total blindness in one eye, whereas the sight is affected only to the extent of 90 or 95 per cent. The evidence is, however, ample to justify a finding that the applicant is industrially blind in his left eye. The applicant testified that, while he could distinguish light from darkness, nevertheless glasses are useless to him because he cannot even see the glasses and that in doing his work he has no use of his left eye. In the latter statement the doctor concurred. We have frequently held that we cannot review questions of fact where there is some substantial evidence in support of the Commission's findings. The findings of the Commission must therefore prevail.

It is next argued that the Commission exceeded its powers in allowing a doctor's fee. While there is some merit to this contention, yet in this case the order of the Commission in that regard is of no practical consequence. The doctor, the eye specialist, who attended the applicant, is in the regular employ of the plaintiff and was fully paid for his services in this case by the plaintiff. The doctor testified that he made no claim against the plaintiff, and the applicant likewise testified that he made none for doctor's fees because he had not been required to pay any. In view that the doctor has been paid by the plaintiff and claims nothing, and in view that the applicant likewise claims nothing, all the doctor has to do is to file a disclaimer with the Commission and enter satisfaction of the amount allowed for his services. The plaintiff can then not be prejudiced, and it is not necessary to make any order respecting the matter.

We desire to state in conclusion that we have had less

hesitancy in arriving at the conclusion that the applicant was engaged in intrastate commerce at the time of the injury for the reason that that question is one of which the Supreme Court of the United States has ultimate jurisdiction. If we have erred in our conclusion, therefore, the plaintiff has a speedy and adequate remedy by suing out a writ of certiorari to have the question determined by the Supreme Court of the United States. If, upon the other hand, we should have held otherwise, and our holding would have been erroneous as against the applicant, he would have been remediless.

In view of what has been said, it follows that the findings of the Commission and the award as made must be affirmed, with costs. Such is the order.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.