## Colangelo, Admrx., Appellant, *v.* Pittsburgh & Lake Erie Railroad Co.

## Foster, Admrx., Appellant, *v.* Same.

Argued September 29, 1939.  Before KEPHART, C. J.,
SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Don F. D'Ivernois,* with him *Warren H. Van Kirk,* for appellants.

*James H. Beal, Jr.,* with him *P. K. Motheral* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 27, 1939:

These two actions in trespass were brought under the Federal Employers' Liability Act.[1] The principal question presented in both cases is whether plaintiffs' decedents were engaged in interstate commerce at the time of the accident which caused their deaths. As the present appeals were argued together they may be disposed of in one opinion.

On November 22, 1936, the decedents, Charles B. Foster and Angelo Colangelo, were killed when a yard locomotive of defendant was derailed and went over an embankment. At the time, Colangelo was employed by defendant as the fireman on the engine, and Foster as a yard helper.

The accident occurred on a spur or siding of defendant, known as the "flue dust track," which is located near South Heights, in Beaver County. On the day in question the locomotive was engaged in removing from the siding twenty-three empty freight cars of the type described as "hoppers." After twenty-two of the cars had been moved onto a main track next to the siding, the locomotive returned to the flue dust track to remove the one remaining freight car, when the locomotive became derailed and toppled over the embankment.

At the trial plaintiffs endeavored to prove that the movement of the freight cars on this particular siding was the beginning of an interstate journey from South Heights, Pennsylvania, to East Rochester, New York, where the cars were to undergo repairs, and hence that the decedents at the time were engaged in work upon or

---

[1] 45 U. S. C. A. Section 51, et seq.

in connection with an instrumentality used in interstate transportation, in order to bring their suits within the provisions of the Federal Employers' Liability Act.

To sustain this contention, plaintiffs called witnesses residing in the vicinity of the siding, who testified that the cars had occupied the track continuously for a year or more, and that they were rusty from disuse. They then introduced evidence that the twenty-three cars on the siding had been stenciled "M. D. T., Heavy Repairs, East Rochester, N. Y.," within a month prior to the accident, and offered in evidence a letter, dated October 3, 1936,[2] written to the foreman of car repairs at the shops of defendant located at Aliquippa, Pennsylvania, and signed by P. H. Fieldson, his superior officer in charge of such repairs, directing that certain numbered cars as specified in the letter be marked with this stencil. This letter was received in evidence, but later the court withdrew it from consideration by the jury, because no testimony was offered to connect the car numbers mentioned in the letter with those of the cars removed from the siding at the time the accident occurred.

The court also excluded the testimony of a former car inspector that he had been verbally notified by the assistant yardmaster, on the morning of the accident, that the cars on the flue dust track were to be removed to the Aliquippa shops where the witness was to "spot them for air . . . and work on them as soon as they got there because he wanted them to depart that night for East Rochester, New York." Similiar testimony of a co-worker was likewise excluded.

---

[2] The letter reads in part, as follows:

"Please refer to my letters dated August 22 and September 9, 1936, in connection with 1419 55-ton hopper cars in P&LE Series 52000-52988 and PMcK&Y Series 65000-65510 to be repaired at the Merchants Despatch Transportation Company's Shops at East Rochester. In addition to complying with instructions contained in letter dated August 22, you will also see that stenciling is placed on each car indicating 'For Repairs at M. D. T. Shops, East Rochester, N. Y.'"

The trial judge entered compulsory nonsuits in both cases on the ground that plaintiffs had failed to prove by competent evidence that the work upon which the employees were engaged was in connection with interstate commerce. The court in banc refused to take off the nonsuits, and plaintiffs have appealed, assigning as error this action of the court below, and its rulings upon the evidence mentioned.

The burden rested upon the plaintiffs in the present cases to show that their actions came within the provisions of the federal legislation which they invoked. The general rule is that members of switching or yard crews, whose duties may involve work in both interstate and intrastate commerce, are not so exclusively identified with either type of activity that they may be presumed to be engaged in the one rather than the other occupation. See *Mease v. Reading Co.*, 126 Pa. Superior Ct. 436, certiorari denied 302 U. S. 705; *Konsoute v. Penna. R. R. Co.*, 287 Pa. 302, certiorari denied 273 U. S. 747. The federal courts have consistently held that claims cannot be prosecuted under the Federal Employers' Liability Act merely upon the assumption that the persons injured were engaged in interstate commerce: *Osborne v. Gray*, 241 U. S. 16.

We are not persuaded that plaintiffs' evidence was sufficient to sustain this burden. Proof that the cars were stenciled for heavy repairs in East Rochester, New York, does not establish the fact that at the time of the accident the cars were destined for immediate transfer to another state. Plaintiffs' evidence discloses that the stenciling may have been on the cars for over a month, during which time they could have been moved to East Rochester and have been returned, or, it might indicate that the cars were scheduled to begin the journey to another state at some future time.

It is obvious that not every movement of cars marked for eventual interstate transit is necessarily the commencement of an interstate journey, and proof of such

markings, without additional evidence, is insufficient to bring a case within the federal act. See *Wise v. Lehigh Valley R. Co.*, 43 Fed. (2d) 692. Here the conclusion reached by the court below that such markings did not in themselves establish that the operations were interstate in character must be sustained, because there was not sufficient proof connecting the stenciling of the cars with their movement from the siding.

The letter of October 3, 1936, to the foreman of car repairs at Aliquippa was properly excluded. Although it referred specifically to the numbers of the cars to be stenciled, plaintiffs made no effort to establish that these numbers were identical with those of the cars which had stood upon the siding. The proofs so offered failed to show any connection between the instructions contained in the letter and the shifting of the cars which occurred on the date of the accident. Under these circumstances the letter was clearly incompetent to establish the fact for which it was offered,—that an interstate journey had commenced.

There remains the question of the admissibility of the assistant yardmaster's oral instructions to the car inspectors on the morning of the accident. Reviewing the record, it seems to us that his direction to remove the cars to the Aliquippa shops for repairs was the full extent of his authority in this connection, which carried with it no authorization on his part to make any declaration respecting the ultimate destination of the cars. Plaintiffs did not prove that his statement to the effect that the cars "were to depart that night for East Rochester" was an essential or integral part of the instructions given to the car inspectors, nor that the work to be done at the Aliquippa shops was of such character that the nature and length of the journey would have affected their work upon the cars. As the court below said, the statement as to destination "does not rise above the dignity of mere gossip between two employees."

It is not sufficient that the information so given happened to be coupled with instructions which the yardmaster was fully authorized to issue: *Mirkowicz v. Reading Co.*, 84 Fed. (2d) 537; *Central R. Co. of N. J. v. Sharkey*, 259 Fed. 144. In the latter case the explanation given that a car being prepared was "a rush car for Philadelphia" was held to be an "idle remark," unauthorized and unnecessary to the instructions. In the present case not only was the declaration in question gratuitous, and not required for the proper discharge of the yardmaster's functions, but there was no showing that he was in a position to be accurately informed as to the ultimate destination of the cars. This evidence was, therefore clearly incompetent, and was properly excluded.

Plaintiffs further contend that the removal of twenty-two of the cars to the main line track, a track used by interstate trains, rendered the entire transaction one in interstate commerce, since the approach of an interstate train on that track would have necessitated a further shifting of these freight cars. While it has frequently been held that the clearing of tracks to permit the passage of interstate trains is a part of interstate commerce,[3] in these cases the principal purpose of the operation was to remove debris or other obstructions from the tracks, and it is clear that they have no application to the facts here present. See *Wise v. Lehigh Valley R. Co.*, supra; *Rice v. B. & O. R. Co.*, 42 Fed. (2d) 387.

The plaintiffs failed to meet the burden of proving by competent evidence that the decedents at the time of their deaths were engaged in interstate commerce, and the entry of a compulsory nonsuit in each case was proper.

The judgments are affirmed.

---

[3] *Southern R. Co. v. Puckett*, 244 U. S. 571; *New York Central R. Co. v. Porter*, 249 U. S. 168; *Kinzell v. Chi., M. & St. Paul Ry. Co.*, 250 U. S. 130; *Deuel v. C., B. & Q. R. R. Co.*, 253 Fed. 857; *Bamberger Elec. R. R. Co. v. Winslow*, 45 Fed. (2d) 499.